[Cite as *Gateway Consultants Group, Inc. v. Premier Physicians Ctrs., Inc.*, 2017-Ohio-1443.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 104014**

---

# GATEWAY CONSULTANTS GROUP, INC.

PLAINTIFF-APPELLEE

vs.

# PREMIER PHYSICIANS CENTERS, INC., ET AL.

DEFENDANTS-APPELLANTS

---

## JUDGMENT:
AFFIRMED AS MODIFIED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-798775

**BEFORE:** Celebrezze, J., Boyle, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** April 20, 2017

**ATTORNEYS FOR APPELLANT**

George M. Moscarino
John M. Moscarino
William H. Falin
Moscarino & Treu, L.L.P.
The Hanna Building
1422 Euclid Avenue, Suite 630
Cleveland, Ohio 44115


**ATTORNEYS FOR APPELLEE**

Thomas V. Chema
1701 East 12th Street, Suite 504
Cleveland, Ohio 44114

John Richard Chema
1606 19th Street, N.W.
Washington, D.C. 20009

Eric H. Zagrans
Zagrans Law Firm, L.L.C.
6100 Oak Tree Boulevard, Suite 200
Cleveland, Ohio 44131

FRANK D. CELEBREZZE, JR., J.:

**{¶1}** Premier Physicians Centers, Inc. ("Premier") appeals from a judgment in favor of Gateway Consultants Group, Inc. ("Gateway") in the amount of $330,847.48. Premier alleges that the jury's damages award has no basis in the evidence presented, so the trial court erred in denying its motions for judgment notwithstanding the verdict or new trial. After a thorough review of the record and law, this court affirms, but modifies the amount of damages to $209,750 and the amount of prejudgment interest to $14,343.45.

## I. Factual and Procedural History

**{¶2}** Gateway and Premier entered into a consulting agreement where Gateway would negotiate a new contract between Premier and insurance provider Medical Mutual of Ohio ("Medical Mutual") for reimbursement. As a result, Premier and Medical Mutual entered into a three-year contract negotiated by Gateway beginning May 1, 2012. Prior to the new contract, Premier's contract with Medical Mutual called for reimbursement at a rate of 105 percent of Medical Mutual's proprietary formulary. This worked out to 94.5 percent of the 2011 Medicare formulary provided by the federal government. The new contract called for reimbursement at a rate of 107.5 of the 2011 Medicare formulary, with adjustments to 112.5 in the second year, and 117.5 in the third year of the contract.

{¶3} The contract between Gateway and Premier provided for compensation to Gateway in the amount of $5,000 per month, plus a "success fee" based on any increased rate of reimbursement negotiated by Gateway. Gateway was entitled to 25 percent of that increased revenue. Premier paid Gateway $5,000 per month until the contract was terminated by Premier in October 2013. However, Premier failed to pay Gateway any "success fee" due under the contract.

{¶4} Gateway filed suit for breach of contract. The case proceeded to trial and resulted in a jury finding that Premier breached the contract and awarded Gateway $330,847.48 in damages due under the "success fee" provision. The court also awarded prejudgment interest. Following the verdict, Premier filed motions for judgment notwithstanding the verdict and new trial. Those were denied by the trial court, and this appeal followed. Premier now raises three assignments of error for review:

> I. The trial court erred by denying [Premier's] motion for judgment notwithstanding the verdict reducing the amount of the judgment to no more than $41,194.42 because [Gateway's] evidence, whether considered alone or in the context of the jury's damages calculation, was insufficient as a matter of law to support any other amount.

> II. The trial court erred by denying [Premier's] Civ.R. 59(A) * * * motion for new trial on the issue of damages because the jury's damage award in this contract action was manifestly excessive, erroneous, against the manifest weight of the evidence and demonstrably influenced by passion and prejudice resulting from the erroneous admission of incompetent evidence and misconduct that prejudiced Premier's defense.

III. The trial court erred by awarding appellee prejudgment interest on a judgment amount that was contrary to law, grossly excessive, erroneous, against the manifest weight of the

evidence and rendered after the erroneous admission of incompetent evidence and misconduct that prejudiced Premier's defense.

## II. Law and Analysis

## A. Motion for JNOV

{¶5} Premier argues that it is entitled to a reduction in judgment on the amount of damage, which should total $41,194.42. Premier does not argue, and thus concedes, the issue of liability for breach of contract. It asserts that there is no evidence to support an amount of damages above $41,194.42.

{¶6} This court reviews de novo a ruling on a motion for judgment notwithstanding the verdict because it presents a question of law. *Seese v. Admr., Bur. of Workers' Comp.*, 11th Dist. Trumbull No. 2009-T-0018, 2009-Ohio-6521, ¶ 11.

> The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions.

(Citations omitted.) *Posin v. A.B.C. Motor Court Hotel, Inc.,* 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976); *see also* Civ.R. 50(A)(4).

{¶7} In reviewing a decision on a motion for judgment notwithstanding the verdict, this court does not weigh the evidence or evaluate the credibility of witnesses, but must determine whether there is "sufficient material evidence presented at trial on this

issue to create a factual question for the jury." *Malone v. Courtyard by Marriott Ltd. Partnership*, 74 Ohio St.3d 440, 445, 659 N.E.2d 1242 (1996). Further, "[a]bsent a reason to do otherwise, we presume regularity in the jury's verdict." *Frederick D. Harris, M.D., Inc. v. Univ. Hosps.*, 8th Dist. Cuyahoga Nos. 76724 and 76785, 2002 Ohio App. LEXIS 1032, 42 (Mar. 7, 2002).

{¶8} Damages in a breach of contract action must be shown with certainty, and evidence that is based on speculation or conjecture is inadequate.

> In the practical application of this general rule, others, have been adopted as guides in ascertaining the required certainty; as (1) that the damage must flow naturally and directly from the breach of the contract, that is, must be such as might be presumed to follow its violation; and (2) must be not the remote, but proximate consequence of such breach.

*Rhodes v. Baird*, 16 Ohio St. 573, 580-581 (1866). The *Rhodes* court went on to state, "[i]n cases where the damages may be estimated in a variety of ways, that mode should be adopted which is most definite and certain." *Id*. at 581. However, while Premier argues that Gateway did not offer sufficient evidence in support of the amount awarded by the jury, it does not argue that Gateway provided no evidence of damages in this case. Damages are an element to a breach of contract action. *DePompei v. Santabarbara*, 8th Dist. Cuyahoga No. 101163, 2015-Ohio-18, ¶ 20. As such, where no evidence of damages is offered, a directed verdict or judgment notwithstanding the verdict may be appropriate.

{¶9} Here, that is not the argument made. Premier takes issue with the *amount* of damages. "'Such an argument is not appropriate on a motion for [JNOV] because Civ.R.

50(B) provides the means to challenge the jury's verdict, not the jury's award of damages. Appellant's assertion that the evidence does not support the award of damages is better placed in its argument for a new trial and remittitur * * *.'" *Desai v. Franklin*, 177 Ohio App.3d 679, 2008-Ohio-3957, 895 N.E.2d 875, ¶ 25 (9th Dist.), quoting *Jemson v. Falls Village Retirement Community, Ltd.*, 9th Dist. Summit No. 20845, 2002-Ohio-4155, ¶ 17. This is so because "[i]n Ohio, it has long been held that the assessment of damages is so thoroughly within the province of the jury that a reviewing court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive." *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 655, 635 N.E.2d 331 (1994), citing *Toledo, Columbus & Ohio River RR. Co. v. Miller*, 108 Ohio St. 388, 402-403, 140 N.E. 617 (1923).

{¶10} Premier attempts to take advantage of the de novo standard of review attendant to motions for judgment notwithstanding the verdict when its arguments squarely fit within a Civ.R. 59 motion that, for many arguments, are reviewed for an abuse of discretion. *C4 Polymers, Inc. v. Huntington Natl. Bank*, 2015-Ohio-3475, 41 N.E.3d 788, ¶ 51 (8th Dist.), citing *Thomas v. Columbia Sussex Corp.*, 10th Dist. Franklin No. 10AP-93, 2011-Ohio-17, ¶ 16. Therefore, these arguments will be addressed in Premier's second assignment of error, and Premier's first assignment of error is overruled.

**B. Motion for New Trial**

**{¶11}** Civ.R. 59 offers an avenue to challenge a verdict on any one of ten grounds. Here, Premier asserts that it is entitled to a new trial on damages relying on seven of those grounds:

> A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
>
> (1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;
>
> (2) Misconduct of the jury or prevailing party;
>
> * * *
>
> (4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
>
> (5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;
>
> (6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;
>
> (7) The judgment is contrary to law;
>
> * * *
>
> (9) Error of law occurring at the trial and brought to the attention of the
>
> trial court by the party making the application.

Civ.R. 59(A).

**{¶12}** This court reviews a trial court's decision on motions for a new trial for an abuse of discretion where the argument addresses an issue that is within the trial court's

discretion. *Robinson v. Turoczy Bonding Co.*, 8th Dist. Cuyahoga No. 103787, 2016-Ohio-7397, ¶ 23. An abuse of the trial court's discretion is connoted by a decision that is arbitrary, unconscionable, or unreasonable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Where the argument addresses an issue of law, such as whether the judgment is contrary to law or the court made an error of law, this court reviews that decision de novo, or without deference to the trial court's decision. *Robinson* at ¶ 23. Therefore, Premier's arguments will be addressed in two groups based on the standard of review.

### i. Irregularity, Misconduct, Passion or Prejudice, Amount of Damages, and Manifest Weight

{¶13} Premier claims that it is entitled to a new trial according to Civ.R. 59(A)(1), (A)(2), (A)(4), (A)(5), and (A)(6). Decisions regarding these portions of Civ.R. 59 are reviewed for an abuse of discretion.

{¶14} Premier's arguments going to irregularity claim that the court erred in allowing William Gill, an analyst working at Gateway, to give expert testimony. Premier is not correct that this is the type of claim that affords relief under Civ.R. 59(A)(1). The trial court held a *Daubert* hearing, excluded Gill from offering expert testimony, and sustained proper objections to some of Gill's testimony. Premier is actually disagreeing with which aspects of Gill's testimony the court deemed lay witness testimony and which it considered expert opinion. Civ.R. 59(A)(1) is meant to preserve "the integrity of the judicial system when the presence of serious irregularities in a proceeding could have a material adverse effect on the character of and public confidence in judicial proceedings."

*Wright v. Suzuki Motor Corp.*, 4th Dist. Meigs Nos. 03CA2, 03CA3, and 03CA4, 2005-Ohio-3494, ¶ 114.   That is not the case here.   The trial court's evidentiary ruling did not induce irregularity such that Premier was denied a fair trial as explained below.

**{¶15}** Premier also argues that the amount of the award was grossly excessive and a new trial is required under Civ.R. 59(A)(2).   Premier is correct.   There is no evidence to sustain an award of $330,847.48.   Gateway argues that there is evidence in the form of a spreadsheet introduced as evidence that supports the jury's calculation of damages.   However, no testimony or other evidence supports the jury's determination.   Both parties appear to agree that the jury subtracted two numbers from the spreadsheet that encompassed payments received by Premier from Medical Mutual for two lengths of time — one prior to contract formation and one after.   However, no testimony established that the two periods of time were similar, or that this would be an adequate representation of damages.   No one provided any testimony that Gateway suffered $330,847.48 in damages, and that figure is not evident from the spreadsheet introduced at trial. Gateway's arguments in support of damages are not persuasive.   Therefore, absent remittitur, a new trial on damages is required.   The same holds true for Premier's argument that the damage award is against the manifest weight of the evidence under Civ.R. 59(A)(6).

**{¶16}** Premier also claims a new trial on damages is required due to Gateway's misconduct.   Premier claims that Gateway committed prejudicial misconduct in closing arguments when it asked for $250,000 in damages when there was no evidence to support

such a figure. "'[A] judgment will not be reversed on the grounds of misconduct in closing arguments unless the circumstances are of such reprehensible and heinous nature as to constitute prejudice.'" *Hinkle v. Cleveland Clinic Found.*, 159 Ohio App.3d 351, 2004-Ohio-6853, 823 N.E.2d 945, ¶ 67 (8th Dist.), quoting *Hitson v. Cleveland*, 8th Dist. Cuyahoga No. 57741, 1990 Ohio App. LEXIS 5466 (Dec. 13, 1990). Gateway's closing argument plea for $250,000 was the result of rounding up the roughly $900,000 in increased payments year-over-year to $1,000,000. While Premier is correct that evidence does not exist to support that one million dollar figure, this court cannot say that the trial court abused its discretion in finding that this did not constitute the type of misconduct that warranted a new trial.

{¶17} Premier also argues that prior to trial Gateway agreed that it would not illicit testimony that Premier was "hiding anything." Gateway did agree to that. However, during the hearing on Premier's motion in limine, Gateway asserted that it would demonstrate that Premier had the payment data available to it and instead of providing it in discovery in a manner that could be used to calculate damages, it provided it in a form that was not suitable for that purpose. That is what Gateway did at trial. This court cannot say that the trial court abused its discretion in overruling Premier's objections, or in holding that Premier's other allegations of misconduct rise to the level of requiring a new trial.

{¶18} Premier next argues that a new trial is warranted based on an award of damages that was the result of passion or prejudice under Civ.R. 59(A)(4).

**{¶19}** Civ.R. 59(A)(4) has two elements, (1) an excessive or inadequate award, and (2) evidence of passion or prejudice. "Size, per se, will not suffice for proof of passion or prejudice." *Pearson v. Cleveland Acceptance Corp.*, 17 Ohio App.2d 239, 245, 246 N.E.2d 602 (8th Dist.1969). Where there is no direct evidence offered of passion or prejudice, the amount of the verdict "must be so grossly disproportionate as to shock the sensibilities." *Berry v. Lupica*, 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318, ¶ 39 (8th Dist.), citing *Airborne Express, Inc. v. Sys. Research Laboratories, Inc.*, 106 Ohio App.3d 498, 510, 666 N.E.2d 584 (12th Dist.1995); *Miller*, 108 Ohio St. 388, 140 N.E. 617.

**{¶20}** After reviewing the record, this court cannot agree with Premier that Gateway engaged in prejudicial misconduct or improperly influenced the jury through passion or prejudice. While the amount of the verdict returned by the jury was higher than any amount established by testimony, that amount, Premier has asserted in this appeal, was a simple calculation made by subtracting one number contained in a spreadsheet from another. This was not the determination of a "runaway jury." Gateway attempted to elicit testimony on noneconomic damages and a loss of business reputation, but the trial court sustained objections to these lines of questioning and such evidence was not introduced. This matter was a breach of contract action without serious pleas to matters that would lead the jury astray.

**{¶21}** Here, there is no evidence of passion or prejudice and the jury's award, as Premier asserts, was the result of the jury doing a simple but erroneous calculation of

comparing the income received from a partial year before the contract was negotiated with a different length of a partial period after the contract took effect. Therefore, the trial court did not abuse its discretion in denying Premier's motion on the basis of passion or prejudice.

## ii. Contrary to and an Error of Law

**{¶22}** Premier also argues that the jury's verdict was contrary to law, or that it was the result of an error of law made by the trial court. These arguments are reviewed de novo. De novo review encompasses an independent examination of the record and law without deference to the underlying decision. *Demeraski v. Bailey*, 2015-Ohio-2162, 35 N.E.3d 913, ¶ 11 (8th Dist.).

**{¶23}** Premier attempts to classify its claim that the trial court erred in allowing the testimony of Gill as an error of law. However, the admission or exclusion of evidence is within the trial court's discretion. Allowing a fact witness to testify about data accumulated during the contract-negotiation process does not render the judgment contrary to law and does not constitute an err of law.

**{¶24}** Premier argues that the trial court introduced error in allowing Gill to testify when that testimony did not meet the standards for reliability established under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Premier also argues that the trial court ruled that Gill would not be allowed to provide expert testimony because he did not provide an expert report in compliance with the court's local rule. Premier asserts that despite this ruling, the court allowed Gill to

give expert testimony. Premier also asserts that the court erred in allowing Gill to give opinion testimony about the analysis conducted by a Medical Mutual employee, Jolynn Isaac.

{¶25} Most of Gill's testimony did not need to meet the standard of scientific reliability because he testified as a fact witness about documents and calculations he made during the course of negotiations between Gateway and Medical Mutual, which were relied on by Gateway, Premier, and Medical Mutual during those negotiations. Gill's calculations were not scientifically unreliable, untested novelties. He testified during the *Daubert* hearing that he used formulas and spreadsheets commonly employed in the industry to derive reimbursement rates, payments, and income. These were relied on by Premier and accepted as accurate during the contract negotiations. This is not scientific evidence produced for trial that fails a *Daubert* analysis, and the trial court did not err in so ruling.

{¶26} Gill did rely on a document prepared by Wendy Payne, a Medical Mutual employee, that was also used and relied on by all the parties during the contract negotiations. This estimation of future payments during the contract period was admitted into evidence, and this court cannot say that the trial court abused its discretion. Gill calculated the past payments received by Premier for the year prior to contract execution as a part of the contract negotiations and subtracted that from the future payments estimated by Gill and Payne. Subtracting one number from another does not constitute expert testimony.

**{¶27}** Gill also testified, based on the spreadsheet Jolynn Isaac provided, that she used improper rates of reimbursement for the starting point under the old contract. Again, that is not expert testimony. This is testimony of a fact witness familiar with the reimbursement rates of the prior contract between Medical Mutual and Premier because Gateway was hired to establish what those rates were and negotiate new rates. It was not error for the trial court to allow this testimony. The jury's verdict is not contrary to law as Premier argues. Further, the trial court did not commit an error of law that rendered the jury's verdict flawed to such a degree as to warrant a new trial. Therefore, Premier's assignment of error related to its motion for new trial is sustained in part.

## C. Remittitur

**{¶28}** Premier also sought remittitur before the trial court. Remittitur is appropriate where "'(1) unliquidated damages are assessed by a jury, (2) the verdict is not influenced by passion or prejudice, (3) the award is excessive, and (4) the plaintiff agrees to the reduction in damages.'" *Lupica*, 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318, at ¶ 42 (8th Dist.), quoting *Dardinger v. Anthem Blue Cross & Blue Shield*, 98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121, citing *Chester Park Co. v. Schulte*, 120 Ohio St. 273, 166 N.E. 186 (1929), paragraph three of the syllabus.

**{¶29}** The damages here are unliquidated and excessive, but do not appear to have been the result of passion or prejudice. Therefore, remittitur may be appropriate with Gateway's consent. This court must determine the amount of damages that is supported in the record.

**{¶30}** "The general rule regarding damages in civil cases is that they must be proven with certainty, but the amount may be reasonably estimated." *TJX Cos. v. Hall*, 183 Ohio App.3d 236, 2009-Ohio-3372, 916 N.E.2d 862, ¶ 32 (8th Dist.), citing *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1038 (9th Cir.1994). "'Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate.'" *Id.*, quoting *Palmer v. Connecticut Ry. & Lighting Co.*, 311 U.S. 544, 559-560, 61 S.Ct. 379, 85 L.Ed. 336 (1941), citing *Eastman Kodak Co. v. S. Photo Materials Co.*, 273 U.S. 359, 379, 47 S.Ct. 400, 71 L.Ed. 684 (1927).

**{¶31}** "The rule allowing estimates is especially applicable where defendant's conduct prevents an exact calculation." *TJX Cos.* at ¶ 33. "As to the amount of damages, only a reasonable certainty is required, which has been defined as 'that degree of certainty of which the nature of the case admits.'" *Fiorilli Constr., Inc. v. A. Bonamase Contracting, Inc.*, 8th Dist. Cuyahoga No. 94719, 2011-Ohio-107, ¶ 36, quoting *Bemmes v. Pub. Emps. Retirement Sys.*, 102 Ohio App.3d 782, 789, 658 N.E.2d 31 (12th Dist.1995).

**{¶32}** Here, Premier chose not to provide requested information in a format that could be used to calculate damages. Premier possessed that data. On proper request by Gateway, Premier provided a document to Gateway, but in a format that was unsuitable for use in calculating damages in this case. Premier provided a document consisting of hundreds of thousands of data points in portable document format. This document, what

amounts to a picture of the actual data, is unusable for data calculations as provided. Premier finally, the week before trial, provided a spreadsheet in a usable format given to it by Medical Mutual. While Premier did not technically violate any discovery rule or order, its heavy-handed attempts at gamesmanship led Gateway to rely on the information it had available to it timely provided prior to trial. Premier's tactics introduced ambiguity into the proceedings and Premier will not be rewarded for it. From our review of the record in this case, sufficient evidence of damages exists in the record to sustain a damages award in the amount testified by Gill, but not in an amount found by the jury.

{¶33} Premier asserts that the only competent evidence at trial of the actual amount of damages was offered by Isaac. Isaac conducted an impact analysis of the contract rates during the period of time at issue. She testified that Premier's revenue from Medical Mutual only increased by $41,194.42 as a result of the new contract negotiated by Gateway. However, the spreadsheet she generated, and provided to the jury, indicated that the reimbursement rates prior to May 1, 2011, were different than those specified in the previous contract between Medical Mutual and Premier.

{¶34} Isaac took into consideration payments that were part of the Quality Alliance Program that Premier entered into in October 2011. Under this program, Premier could earn additional compensation if it met certain quality metrics. The program was developed by the Cleveland Clinic and in partnership with Medical Mutual. However, during Gateway's negotiations on behalf of Premier, documents and testimony indicates that Quality Alliance payments would be in addition to the base rate on which payments

were calculated. Isaac and David Appel, Premier's chief executive officer, testified otherwise, but that testimony was contradicted by Premier's president, Dr. Antonois Paras, Gateway's president, Joan Mason, and other evidence introduced at trial. Also, Isaac began her testimony by stating her supervisor told her to remove Quality Alliance payments from the spreadsheet. Later, she repeatedly stated Quality Alliance payments were included in the reimbursement rates.

{¶35} Further, Premier responded to interrogatories in 2012 where it admitted that the contract negotiation had resulted in increased revenue of roughly $53,000. Therefore, Premier acknowledged that the damages in this case were higher than those reflected in the report generated by Medical Mutual.

{¶36} The jury made credibility determinations adverse to Premier and determined that Gateway had negotiated a significant increase in reimbursement on behalf of Premier and were owed for that under the contract. The jury found, with good cause, that the evidence offered by Isaac was incomplete and did not offer an accurate gauge of the damages suffered by Gateway. Gill, a Gateway analyst, conducted his own analysis of the benefit bestowed on Premier as a part of the contract negotiations. He estimated the increased revenue received by Premier at $839,000, to which Gateway was entitled to a quarter, or $209,750. This analysis was supported by Isaac's calculation of the total revenue Premier received, which was equivalent to Gill's estimation. Gill was not allowed to offer an expert opinion, but he was allowed to testify about damages based on his personal knowledge gained during the contract negotiations and documents and

calculations prepared for and relied on by all parties. Therefore, sufficient evidence exists to support a verdict in the amount of $209,750.

**{¶37}** The award of roughly $330,000 is not supported by any testimony in the record. Damages in the amount of $209,750 are supported in the record. This court "has the same unlimited power and control of verdicts and judgments as the trial court and may weigh the evidence and exercise an independent judgment upon questions of excessive damages and when no passion or prejudice is apparent may modify and affirm the judgment by ordering a remittitur with the consent of the prevailing party." *Schulte*, 120 Ohio St. 273, 166 N.E. 186, at paragraph five of the syllabus. *See also Moskovitz*, 69 Ohio St.3d 638, 653, 635 N.E.2d 331, at fn. 6. Therefore, this court can affirm the judgment as modified through remittitur with the consent of the prevailing party.

**{¶38}** Gateway was given the option to accept remittitur, and on April 7, 2017, agreed to accept this amount of damages that is supported in the record. Therefore, the judgment is affirmed as modified to $209,750.

### D. Prejudgment Interest

**{¶39}** Finally, Premier argues that the trial court should only have awarded prejudgment interest on the amount of damages as testified to by Isaac.

**{¶40}** R.C. 1343.03 provides for the award of prejudgment interest in a successful breach of contract claim. Prejudgment interest acts to compensate an aggrieved party where payment was due and owing, but was not tendered. It relieves the breaching party of any benefit in retaining money that should have been tendered. *Wasserman v. Home*

*Corp.*, 8th Dist. Cuyahoga No. 90915, 2008-Ohio-5477, citing *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110, 652 N.E.2d 687 (1995).

**{¶41}** Due to this court's ruling above, Premier is partially correct that the amount of prejudgment interest must be recalculated to reflect a lower amount of damages. The amount of prejudgment interest should be calculated based on the reduced amount of damages of $209,750. The trial court calculated prejudgment interest in its journal entry as follows: "Motion for inclusion of prejudgment interest * * * is granted in the amount of $22,624.53 ($330,847.48 x 3% interest / 365 days per year x 832 days from 05/31/2013 through 09/09/2015) * * *." That same calculation with the modified amount of damages yields $14,343.45.

**{¶42}** Therefore, the amount of prejudgment interest awarded by the trial court is modified to $14,343.45.

### III. Conclusion

**{¶43}** The jury's verdict awarding roughly $330,000 in damages is not supported by evidence in the record before this court. Damages in the amount of $209,750 are supported. Therefore, the trial court erred in not granting Premier's motion for new trial and lowering the amount of damages accordingly. The amount of judgment is modified to $209,750 with an award of $14,343.45 in prejudgment interest.

**{¶44}** This cause is affirmed as modified.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common

pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.



FRANK D. CELEBREZZE, JR., JUDGE

MARY J. BOYLE, P.J., and
ANITA LASTER MAYS, J., CONCUR