[Cite as *Tolani v. Med. Mut. of Ohio*, 2025-Ohio-5624.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

AJIT TOLANI, ET AL.,                          :

    Plaintiffs-Appellants,          :

                                        No. 114356

    v.                              :

MEDICAL MUTUAL OF OHIO,                   :

    Defendant-Appellee.             :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** December 18, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-975686

---

### *Appearances:*

The Lee Law Firm, LLC, and Brian C. Lee, *for appellants*.

Frantz Ward LLP, Christopher C. Koehler, and Gregory R. Farkas, *for appellee*.

LISA B. FORBES, J.:

{¶ 1}   Ajit Tolani ("Ajit") and Shruti Tolani (collectively, "the Tolanis") appeal the journal entry that granted Medical Mutual of Ohio's ("MMO") motion for summary judgment and dismissed with prejudice the Tolanis' claims for breach of contract and bad faith.  Because we find genuine disputes of material fact exist,

including but not limited to whether Ajit made an intentional misrepresentation of material fact entitling MMO to rescind the Tolanis' health-insurance policy (the "Policy"), we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

## I.    Facts, Procedural History, and Pertinent Exhibits

### A. Background

{¶ 2}    This case concerns MMO's recission of the Tolanis' health-insurance coverage.  The parties do not dispute the following facts.

{¶ 3}    In 2015, Ajit was diagnosed with a life-threatening lung condition.  He is an Indian citizen and lived in India when he was diagnosed.  The Tolanis moved to Cuyahoga County, entering the United States using a B-2 visa on December 23, 2016.

{¶ 4}    On January 30, 2017, Ajit was approved for a double-lung transplant, which would be performed at the Cleveland Clinic.  Ajit purchased from MMO the Policy, effective February 1, 2017.  He did so using the Affordable Care Act Exchange ("ACA Marketplace" or "ACA Exchange"), which allows people to compare and purchase health insurance from different providers.  On February 9, 2017, the Cleveland Clinic sought approval from MMO to perform a double-lung transplant on Ajit.  On March 2, 2017, MMO informed Ajit that it was rescinding his coverage.

### B. Procedural History

{¶ 5}    The Tolanis filed a two-count complaint in the Cuyahoga County Court of Common Pleas, claiming that (1) MMO breached its contract by rescinding

coverage and failing to provide a 30-day notice of rescission, and (2) MMO rescinded coverage without reasonable justification, thereby acting in bad faith.

## C. MMO's Motion for Summary Judgment

{¶ 6} MMO moved for summary judgment on both claims made by the Tolanis, arguing that it had been entitled to rescind Ajit's coverage. MMO attached to its motion numerous documents, the following of which are particularly relevant to this appeal.

### 1. The Policy

{¶ 7} Ajit's Policy had an enrollment period of one year, effective February 1, 2017. The Policy's "Eligibility Requirements" stated, "In order to be eligible for this coverage, you must . . . maintain your primary legal residence in the Service Area and live there for at least six (6) months of each year." The definition of "Service Area" included Cuyahoga County.

{¶ 8} The Policy also addressed "Termination of Coverage," stating, in part, that "[y]our coverage stops . . . [i]mmediately upon notice if" the policyholder "materially misrepresents information provided to Medical Mutual . . . ." The Policy established that MMO could rescind coverage, meaning "coverage may be legally voided all the way back to the day the plan began to provide you with coverage, just as if you never had coverage under the plan." Per the Policy, "coverage can only be rescinded if you . . . make[] . . . an intentional misrepresentation of material fact, as prohibited by the terms of your plan."

### 2. Recission Letter

{¶ 9} MMO also provided the court a letter, dated March 2, 2017, which informed Ajit that MMO was rescinding his coverage ("Recission Letter" or the "Letter"). The Letter stated that "[e]ligibility for a Marketplace plan is specifically outlined in 45 C.F.R. § 155.305 'Eligibility Standards.'" According to the Letter, under these standards, "[a]n individual must intend to be in the service area of the plan for the entire period for which enrollment is sought" and "must intend to reside in the service area." MMO had determined that Ajit did "not meet the residency requirement for a Marketplace plan" because his "only intent for being in the area is to receive medical care" and he "plan[ned] to leave the United States as soon as . . . care is complete, estimated to be within 2 to 9 months."

{¶ 10} The Letter then explained that, because of a "misrepresentation of material facts submitted to the Marketplace at the time of enrollment," MMO was exercising its "right to rescind." The Letter stated that recission meant to "cancel or discontinue coverage back to the original effective date of [the] policy as if the coverage never existed." On March 31, 2017, "coverage [would] be terminated with a retroactive date of February 1, 2017, the date of your enrollment."

### 3. Social Worker's Note

{¶ 11} Of particular relevance to MMO's decision to rescind coverage is a note, dated January 11, 2017, which summarized a social worker's psychosocial evaluation of Ajit ("Social Worker's Note" or "the Note"). This evaluation was part of the Cleveland Clinic's assessment of Ajit as a candidate for a lung transplant. The

Social Worker's Note included information about Ajit's relocation to the country, immigration status, and plans.

{¶ 12} Per the Note, Ajit "came to US with his wife, their 9 yo daughter and his sister and uncle are staying here for the next two months." The Note also said that Ajit was "prepared that he may have to be here for 9 months" and that he demonstrated "commitment to transplant time frame they expected was 9 months . . . ." As to Ajit's "Resident Status," the Note classified him as a "Non-U.S. Citizen/Non-U.S. Resident, Traveled to U.S. for Transplant." As to what Ajit expected to do after treatment, the Note stated, "Any moves planned: no."

### 4. B-2 Visa Extension Applications

{¶ 13} Several documents provided by MMO show that, after entering the United States, Ajit twice requested that United States Citizenship and Immigration Services ("USCIS") extend his B-2 visa. Ajit's visa was originally set to expire on June 22, 2017. The Tolanis submitted to USCIS an "Application to Extend / Change Nonimmigrant Status," dated June 12, 2017. Another extension request, dated December 20, 2017, notes that USCIS granted the Tolanis' first request until December 22, 2017.

### 5. HHS Notice

{¶ 14} MMO also provided the court a notice from the United States Department of Health and Human Services ("HHS Notice") that HHS appears to have sent to Ajit on December 27, 2016. The HHS Notice purports to approve Ajit to purchase health insurance using the ACA Exchange. The HHS Notice stated that

Ajit was "[e]ligible to purchase health coverage through the Marketplace" and provided "Next Steps," including to "[c]hoose a health plan and make first month's payment." Under the header "What should I do next?" the HHS Notice invited Ajit to "[v]isit HealthCare.gov to compare plans side by side . . . ."

### 6. HHS FAQ

{¶ 15} MMO also attached a list of "FAQs on the Marketplace Residency Requirement" that HHS appears to have issued. ("HHS FAQ" or "the FAQ"). The HHS FAQ states that "[f]or the purposes of § 155.305(a), 'intends to reside' means that an applicant has a present intent to reside where he or she is living, and intends to remain in the Exchange service area . . . ." The FAQ further provides that individuals "visiting an Exchange service area for a transitory purpose, for example . . . to obtain medical care . . . do not have a present intent to reside, and do not meet the residency requirement for Marketplace Coverage . . . ."

### 7. Ajit's Deposition

{¶ 16} MMO provided Ajit's deposition in which MMO extensively questioned Ajit, including the following:

Q: [Y]ou intended to stay in the United States when you came in December of 2016, correct?

A: That's right.

**D. The Tolanis' Opposition**

{¶ 17} The Tolanis also attached documents to their brief opposing

summary judgment, including plaintiffs' exhibits A, B, D, and E.[1]  MMO argues that these documents are "not authenticated by an affidavit and are not admissible summary judgment evidence."  While the four documents that MMO contends are inadmissible did not contribute to this decision, we did consider Dr. Atul Mehta's affidavit, which was offered by the Tolanis and was not specifically objected to by MMO.

### 1. Dr. Mehta's Affidavit

{¶ 18} Dr. Atul Mehta, Ajit's treating physician, swore to and signed an affidavit stating that Ajit needed a lung transplant and ongoing treatment. Dr. Mehta's "best estimate for Mr. Tolani's recovery time [was] at least one year from the date of the transplant with ongoing medical care and monitoring at Cleveland Clinic extending beyond that point."  For this reason, "Mr. Tolani's health would not allow him to travel to India or to otherwise leave Ohio."

### E. Grant of Summary Judgment and Appeal

{¶ 19} On August 16, 2024, the court issued a journal entry granting MMO's motion for summary judgment, dismissing the Tolanis' claims with prejudice.  The court found that MMO's coverage recission "did not constitute a breach of contract" and plaintiffs' bad-faith claim "fails as a matter of law because plaintiffs cannot establish that there was no reasonable justification" for rescinding coverage.  The

---

[1] In order, these documents appear to be a scanned image of Ajit's B-2 visa card and a document labeled "Affidavit of Ajit Tolani" that does not appear to have been sworn to and signed in the presence of a notary public. *See Glinsky v. Zeltman*, 2023-Ohio-4883, ¶ 8-9; R.C. 147.011.  Also among these documents are Ajit's Healthcare.gov application and a health-insurance policy that Ajit purchased from Anthem.

court reasoned that "[b]ased on the evidence presented, there remain no genuine issues of material fact that plaintiffs came to Ohio to obtain medical care and did not intend to reside within the [service area] for the entire period for which enrollment was sought."

{¶ 20} From this order, the Tolanis appealed, raising the following assignments of error:

> 1. The trial court incorrectly granted MMO's summary judgment finding that MMO did not breach their insurance contract with Ajit Tolani when they rescinded coverage.
>
> 2. The trial court incorrectly granted MMO's summary judgment finding that Plaintiff-Appellants could not establish there was no reasonable justification for MMO's determination that Ajit Tolani was not eligible for coverage through the ACA exchange.

## II. Law and Analysis

{¶ 21} "Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law." *Madaras v. Applebee's Neighborhood Grill & Bar*, 2025-Ohio-169, ¶ 12, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). A material fact "'might affect the outcome of the suit under the governing law' of the case." *Oko v. Cleveland Div. of Police*, 2021-Ohio-2931, ¶ 23 (8th Dist.), quoting *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993). "A factual dispute is 'genuine' only if 'it allows reasonable minds to return a verdict for the nonmoving party.'" *Huntington*

*Natl. Bank v. Blount,* 2013-Ohio-3128, ¶ 32 (8th Dist.), quoting *Sysco Food Servs. v. Titan Devs.*, 1995 Ohio App. LEXIS 4762, *7 (9th Dist. Oct. 25, 1995).

{¶ 22} The movant for summary judgment has the "initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment." *Madaras* at ¶ 12, citing *Dresher v. Burt*, 75 Ohio St.2d 280, 292-293 (1996). "[D]etermining whether issues of disputed fact exist is different from making findings of facts"; when a court does the former, "the evidence . . . c[an] not be weighed, only reviewed . . . ." *Smathers v. Glass*, 2022-Ohio-4595, ¶ 32.

{¶ 23} "We review summary judgment rulings de novo, applying the same standard as the trial court." *Madaras* at ¶ 12, citing *Grafton* at 105. "'De novo review encompasses an independent examination of the record and law without deference to the underlying decision.'" *Torres v. Concrete Designs, Inc.*, 2019-Ohio-1342, ¶ 48 (8th Dist.), quoting *Gateway Consultants Group, Inc. v. Premier Physicians Ctrs., Inc.*, 2017-Ohio-1443, ¶ 22 (8th Dist.).

{¶ 24} Regarding what evidence we may consider when ruling on a motion for summary judgment, this court has stated as follows:

> [T]he materials a party may use to support or oppose a motion for summary judgment are generally limited to the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence and written stipulations of fact. Other types of documents may be introduced as evidentiary material only through incorporation by reference in a properly framed affidavit. *Professional Bank Servs. v. Grossman DT, Inc.*, 2019-Ohio-2230, ¶ 10 (8th Dist.), citing *Dzambasow v. Abakumov*, 2005-Ohio-6719, ¶ 26 (8th Dist.). Submitted documents that have not been sworn, certified or authenticated by affidavit, in accordance with Civ.R. 56(C) and (E), generally have no evidentiary value and need not be considered by the

trial court in ruling on a summary judgment motion. *See, e.g., Wolk v. Paino*, 2011-Ohio-1065, ¶ 26 (8th Dist.). Further, "'[w]hile a court, in its discretion, may consider other documents than those specified in Civ.R. 56(C) if there is no objection, there is no requirement that a court do so.'" *Mentch v. Cuyahoga Cty. Pub. Library Bd.*, 2018-Ohio-1398, ¶ 53, quoting *Wolk v. Paino*, 2010-Ohio-1755, ¶ 28 (8th Dist.).

*Gurary v. John Carroll Univ.*, 2024-Ohio-3114, ¶ 35 (8th Dist.).

### A. Assignment of Error No. 1 — Breach of Contract

{¶ 25} Regarding their breach-of-contract claim, the Tolanis argue that the trial court erred in granting summary judgment to MMO because issues of fact exist. According to the Tolanis, evidence in the record contradicts MMO's assertion that Ajit intended to depart the service area within two to nine months. Specifically, Dr. Mehta's affidavit states that Ajit's recovery would prevent him from doing so because he needed more than a year of follow-up treatment at the Cleveland Clinic. The Tolanis also argue that Ajit's immigration status did not render him ineligible, as a matter of law, to purchase insurance using the ACA Exchange. Ajit maintains that he did not make an intentional material misrepresentation and that MMO did not have grounds, under the insurance contract, to rescind coverage.

{¶ 26} In response, MMO argues that undisputed facts show that it did not breach the Policy. Again, the Policy provided that "coverage can only be rescinded if you . . . make . . . an intentional misrepresentation of material fact . . . ." Per MMO, the evidence shows that Ajit materially misrepresented information when he "certified to Medical Mutual through the Exchange application that he met all the requirements and eligibility standards to be eligible to purchase a qualified health

plan through the Exchange." Under these circumstances, MMO reasons, the Policy allowed recission.

{¶ 27} As an initial matter, we find that MMO has not demonstrated with undisputed facts that Ajit made any intentional misrepresentation of material facts sufficient for MMO to rescind coverage. MMO has identified no inaccuracies in Ajit's application for health insurance. MMO did not provide any evidence whatsoever regarding what information Ajit provided to Healthcare.gov or MMO when he applied for coverage. To the contrary, although the Tolanis supported their brief opposing summary judgment with a document that purports to be Ajit's Healthcare.gov application, MMO argues that the document has "no evidentiary value and cannot be considered by the court" because it is unauthenticated. *See* Civ.R. 56(C); *Kent's Excavating Servs. v. Leneghan*, 2017-Ohio-1371, ¶ 13 (8th Dist.).

{¶ 28} We also find that MMO has not demonstrated with undisputed evidence that Ajit was ineligible to purchase insurance using the ACA Exchange, such that simply applying amounted to an intentional misrepresentation that supported MMO's recission of coverage. MMO's assertion that Ajit materially misrepresented that he was eligible to purchase health insurance through the Exchange is at odds with the HHS Notice that informed Ajit that he was eligible for coverage and could "[v]isit Healthcare.gov to compare plans side by side . . . ." From this evidence, a reasonable factfinder could determine that Ajit was eligible. Again,

the record is devoid of information about what the ACA Marketplace application requested or what Ajit provided.

{¶ 29} Nonetheless, MMO argues that Ajit was ineligible to purchase insurance using the ACA Exchange. 45 C.F.R. 155.305(a)(1) and (a)(3) outline the ACA Exchange eligibility standards pertinent to this appeal. 45 C.F.R. 115.305(a)(1) requires that an applicant be "lawfully present in the United States, and . . . reasonably expected to be . . . lawfully present for the entire period for which enrollment is sought." 45 C.F.R. 115.305(a)(3) requires an applicant to "[m]eet[] the applicable residency standard" by obtaining insurance in the "service areas of the Exchange in which he or she is living" and "[i]ntends to reside . . . ." The parties agree that no case law defines these provisions. MMO contends that statements Ajit purportedly made during his psychosocial evaluation, his use of a B-2 visa to enter the United States, and the purpose of his entry — to obtain medical care — demonstrate that he did not meet these ACA Exchange eligibility standards. We address each in turn, beginning with C.F.R. 115.305(a)(3).

### 1. Intent to Reside in the Service Area

{¶ 30} To be eligible to participate in the ACA Exchange, 45 C.F.R. 155.305(a)(3) requires a policyholder to "[m]eet[] the applicable residency standard" by obtaining insurance in the "service areas of the Exchange in which he or she is living" and "[i]ntends to reside . . . ."

### a. Psychosocial Evaluation

{¶ 31} MMO argues that statements Ajit purportedly made to a social worker during his psychosocial evaluation indicate that he had no actual intent to reside in the service area. MMO's claim in the Recission Letter that Ajit planned "to leave the United States as soon as . . . care is complete, estimated to be within 2 to 9 months," appears to be based on the Social Worker's Note, which discusses a two-to-nine-month timeline. MMO does not reference any other information in the Recission Letter to support its finding that Ajit intended to leave the service area after treatment.

{¶ 32} We find that the Note itself creates a genuine dispute of material fact as to whether Ajit subjectively intended to depart the service area within nine months. The Note states, in part, that Ajit "came to US with his wife, 9 yo daughter and his sister and uncle are staying here for the next two months." It is unclear from this phrase whether only the sister and uncle intended to stay for two months or the entire family did. The above language also says nothing about what the family planned to do after two months passed. Also, it was known when the note was written that Ajit's care would not be completed within two months of the evaluation. At that time, he had not even been scheduled for his lung transplant.

{¶ 33} The Note additionally states that Ajit was "prepared that he may have to be here for 9 months" and demonstrated "commitment to transplant time frame they expected was 9 months . . . ." That Ajit acknowledged his treatment required him to be in the service area for an estimated period does not necessarily indicate

that he intended to depart the service area after that time passed. This is demonstrated by the Note's following statement: "Any moves planned: no."

{¶ 34} According to his treating physician, Ajit's medical condition would not have allowed him to leave the service area for at least a year after his lung-transplant surgery. Dr. Mehta stated in an affidavit that his "best estimate for Mr. Tolani's recovery time is at least one year from the date of the transplant with ongoing . . . monitoring at Cleveland Clinic extending beyond that point." For this reason, Dr. Mehta believed that "Mr. Tolani's health would not allow him to travel to India or otherwise leave Ohio." Again, when Ajit applied for insurance and participated in the psychosocial evaluation, his transplant had not been scheduled, much less completed. Based on these documents alone, a genuine issue of material fact exists as to whether Ajit intended to reside in Cuyahoga County for nine months after the note was written or a full year after the surgery was completed.

### b. B-2 Visa

{¶ 35} MMO also argues that entering the United States on a B-2 visa required Ajit — as a matter of law — to have no intent "to reside" in the service area. B-2 visas are ordinarily effective for six months and require travelers to have a residence in a foreign country that they have no intent to abandon. *See* 8 U.S.C. 1101(a)(15)(B).

{¶ 36} During his deposition, Ajit testified:

Q: [Y]ou intended to stay in the United States when you came in December of 2016, correct?

A: That's right.

{¶ 37} MMO has not demonstrated that Ajit's temporary-visitor status precluded him from intending to reside in the service area. 45 C.F.R. 155.305(a)(3) does not provide criteria an individual must meet to "reside" there. Further, B-2 visa holders can apply to extend their stays beyond six months. In 2017, Ajit did so, and USCIS granted his request.

{¶ 38} In support of its argument that Ajit was ineligible to purchase insurance using the ACA Exchange, MMO asks us to consider a Healthcare.gov webpage entitled "Immigration status to qualify for the Marketplace." At the time of this decision, this webpage provided a "list of who may qualify for the Marketplace" that included "Individual[s] with Non-immigrant Status including workers visas . . . student visas, U-visa, T-visa, and other visas." (accessed Dec. 11, 2025) [https://perma.cc/A92C-5S2J]. MMO has not demonstrated that this guidance is legally binding, nor that "other visas" cannot reasonably be read to include B-2 visas. *See S. Forest Watch, Inc. v. Jewell*, 817 F.3d 965, 971 (6th Cir. 2016) (asserting that statutory interpretations in agency guidance documents are persuasive authority).

### c. Transitory Purpose

{¶ 39} MMO also argues that Ajit did not intend to reside in the service area as a matter of law because he came to the United States for a "transitory purpose," specifically, to obtain medical care. In support of this argument, MMO points us to the HHS FAQ's assertion that individuals "visiting an Exchange service area for a

transitory purpose, for example . . . to obtain medical care . . . do not have a present intent to reside, and do not meet the residency requirement for Marketplace Coverage . . . ."

{¶ 40} Again, MMO has not demonstrated that this agency guidance is legally binding. *See S. Forest Watch* at 971. Even if it were, the guidance does not address whether Ajit specifically intended to reside in the service area. On that issue, a dispute of fact remains. The key question the guidance puts forth, in assessing intent to reside for purposes of ACA Marketplace eligibility, is whether the individual entering the service area "intends to remain" or is "visiting." A "visit" is defined, in part, as "a short stay." Merriam-Webster Online, https://www.merriam-webster.com/dictionary/visit (accessed October 21, 2025) [https://perma.cc/ASV8-SAY7]. *See Finger v. Liberty Mut. Personal Ins. Co.*, 2023-Ohio-2308, ¶ 33 (8th Dist.), quoting *Commercial Intertech Corp. v. Guyan Interntl. Inc.*, 2001 Ohio App. LEXIS 1556, *5 (11th Dist. Mar. 30, 2001) ("A dictionary definition 'is a reliable source for finding the plain and ordinary meaning of a word.'"). That Ajit's relocation to the United States was first inspired by a need for medical care does not alone establish that he intended only a "short stay."

{¶ 41} For the reasons above, MMO has not presented undisputed evidence that Ajit did not intend to reside in the service area for purposes of 45 C.F.R. 115.305(a)(3), such that his act of purchasing insurance using the ACA Exchange amounts to an intentional misrepresentation of material fact.

## 2. Reasonable Expectation of Being Lawfully Present in the Service Area for the Entire Enrollment Period

{¶ 42} 45 C.F.R. 155.305(a)(1) states, in relevant part, that "a non-citizen who is lawfully present in the United States, and is reasonably expected to be . . . lawfully present for the entire period for which enrollment is sought" may purchase insurance using the Exchange. MMO notes that B-2 visas are effective for six months and that Ajit's visa would lapse before his one-year coverage period ended. On this basis, MMO argues that it was entitled to rescind Ajit's coverage because he had no reasonable expectation of being lawfully present in the service area for the duration of the Policy and misrepresented that he did when he used the ACA Exchange to buy coverage. We disagree.

{¶ 43} It is uncontested that Ajit was lawfully present in the United States by virtue of his B-2 visa when he applied for the Policy. As noted above, although B-2 visas customarily permit only six-month stays, USCIS may extend this period and did so in 2017 for Ajit. MMO has identified no information showing that Ajit could not have reasonably expected to obtain one or more extensions and remain lawfully present in the service area for his yearlong coverage period. MMO has not demonstrated with undisputed evidence that Ajit was ineligible to buy insurance using the ACA Exchange under 45 C.F.R. 155.305(a)(1), much less that he knew he was ineligible and proceeded despite that knowledge.

{¶ 44} The court erred in granting MMO summary judgment on the Tolanis' breach-of-contract claim because genuine questions of fact remain including, but

not limited to whether Ajit intentionally made any material misrepresentation of fact such that MMO was justified in rescinding the Tolanis' Policy.

{¶ 45} Accordingly, assignment of error No. 1 is sustained.

**B. Assignment of Error No. 2 — Bad Faith**

{¶ 46} The trial court also erred by granting MMO summary judgment on the Tolanis' claim that MMO acted in bad faith by rescinding coverage without reasonable justification. "[A]n insurer has the duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 275 (1983). "Where a claim for bad faith rests upon the same allegations as a claim for breach of contract and there has been no breach of contract, the bad-faith claim fails as a matter of law." *Shaut v. Natl. Cas. Co.*, 2021-Ohio-2522, ¶ 54 (8th Dist.), citing *Calianos v. Commerce Ins. Co.*, 29 Mass. L. Rep. 316, 16 (2011).

{¶ 47} The Tolanis' claim for bad faith is based on the same allegations that support their claim for breach of contract, namely that MMO improperly rescinded coverage based on Ajit's alleged prior intentional misrepresentations. As we found above, there is a genuine dispute of material fact regarding whether Ajit misrepresented information to MMO. Whether MMO had a reasonable justification for rescinding Ajit's coverage turns in part on resolving that question. The trial court, therefore, erred by granting MMO summary judgment on the Tolanis' bad-faith claim.

{¶ 48} Accordingly, assignment of error No. 2 is sustained.

**{¶ 49}** Judgment reversed. Case remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellants recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

MICHELLE J. SHEEHAN, P.J., and
MICHAEL JOHN RYAN, J., CONCUR