[Cite as *Ebersole v. Toledo Hosp.*, 2025-Ohio-260.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Jaimee Ebersole

      Appellant

v.

The Toledo Hospital, et al.

      Appellees

Court of Appeals No.  L-24-1045

Trial Court No.  CI0202201367

**DECISION AND JUDGMENT**

Decided:  January 24, 2025

* * * * *

Jeffrey W. Swiech, Kevin J. Boissoneault,
And Andrew J. Nash, for appellant.

Julia Smith-Wiley and Jeff M. Smith, for appellees.

* * * * *.

**SULEK, P.J.**

{¶ 1} Appellant Jaimee Ebersole appeals the judgment of the Lucas County Court of Common Pleas, granting appellee The Toledo Hospital's ("the hospital") motion for summary judgment on her claim for negligence based on premises liability.  For the following reasons, the trial court's judgment is affirmed.

## I. Factual Background and Procedural History

{¶ 2} On February 15, 2020, Ebersole sustained injuries when she fell on the sixth floor of the hospital.  At the time, she was caring for her mother who was a regular patient in the oncology ward.  As part of her care, Ebersole made frequent trips to a kitchenette located a short distance away to heat her mother's food.  She estimated that she made around twenty or more trips a day during the days that her mother was at the hospital receiving treatment.

{¶ 3} To reach the kitchenette, Ebersole traversed down her mother's hallway and through a corridor to an adjacent hallway.  In the corridor between the two hallways was a station with a cart for soiled food trays.  She described the hallways and corridors as common areas with foot traffic from patients, family members, and hospital employees.

{¶ 4} On the day of the fall, Ebersole went to heat up her mother's lunch, which would have been at least her fifth or sixth trip that day to heat up food.  She testified that on her way to the kitchenette she did not see anything on the floor.  She was in the kitchenette for about four or five minutes.  As she returned, she slipped and fell near the cart for used food trays.  She described that her left buttocks and hip hit first, followed by her left arm and shoulder, and then her head.

{¶ 5} Within seconds, several hospital employees approached to see if she was alright.  One of the employees made a comment that the floor was wet.  Ebersole then noticed three or four quarter or half-dollar sized droplets of water on the floor, and a larger puddle that was approximately the size of a softball.  She also noticed that her

2.

clothing on her left side was wet, but not soaked. She testified that before she fell she did not see the water, and that there was no way to see it. Ebersole stated that she believed the water was present on the floor from condensation from the food trays.

{¶ 6} At either end of the corridor were nurses' stations. Ashley Reed, a registered nurse employed by the hospital, testified that a nurse or nurse's aide is almost always present at the stations. In addition, she testified that housekeeping is part of the nurses' duties and she was not aware of any spills in the soiled tray area prior to Ebersole's fall "because we would clean it up after."

{¶ 7} Ebersole initiated the present matter on February 8, 2022, when she filed her premises liability complaint against the hospital,[1] seeking compensation for severe and permanent injuries to her knees, ankle, heel, wrist, and back.

{¶ 8} Following pretrial discovery, the hospital moved for summary judgment on Ebersole's claim, arguing that there was no evidence showing that (1) it was responsible for creating the hazard, (2) it had actual knowledge of the hazard, or (3) the hazard existed for a sufficient length of time such that it had constructive knowledge.

{¶ 9} Ebersole opposed the motion, first arguing that the hospital created a process that caused the hazard by designing its floor such that visitors and patients must heat food products in a singular area and return food trays to a cart. She stated that in so doing,

---

[1] Ebersole also listed "John Doe Number One" as a defendant. The trial court dismissed the claim against John Doe Number One in its order granting summary judgment, and Ebersole does not assign any error on that issue.

3.

visitors naturally spill their food and drinks, and steam condenses from the used plates in the single food cart, which she testified was the mechanism that produced the water that caused her fall. She thus asserted that the hospital had actual knowledge of the hazard it created.

{¶ 10} Alternatively, Ebersole maintained that the hospital had constructive knowledge of the hazard. Specifically, she stated that her fall occurred in a high-traffic area of the hospital, in direct view of the nurses' stations, and the nurses and staff members were required to perform sweeps and inspect the premises to discover hazards. According to her, however, no employees performed their inspections, and a hazardous condition was allowed to exist, demonstrating that the hospital had constructive knowledge of the hazard.

{¶ 11} The trial court granted the hospital's motion for summary judgment, holding that there was no evidence presented that the hospital created or had actual knowledge of the hazard. As to constructive knowledge, the trial court held that how the water came to be on the floor and how long it was present left too much to speculation to raise a genuine issue of material fact. It noted that Ebersole did not observe any water near the food tray during any of her many trips to the kitchenette, including the trip moments before she fell while returning to her mother's room. Further, Ebersole testified that she could not see the water and there was no way to see it unless someone had gotten down on the floor and looked at eye level. The trial court reasoned that a "hands-and-

4.

knees inspection of the premises would not be reasonable," and therefore the hospital did not violate its duty of ordinary care.

## II. Assignment of Error

{¶ 12} Ebersole timely appeals the judgment of the Lucas County Court of Common Pleas, asserting one assignment of error for review:

1. The trial court erred when it granted summary judgment in favor of Appellee the Toledo Hospital, L.L.C.

## III. Analysis

{¶ 13} An appellate court reviews the grant of summary judgment under a de novo standard of review. *Koler v. Grand Harbour Condo. Owners Assn.*, 2014-Ohio-1299, ¶ 5 (6th Dist.), citing *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). Summary judgment should be upheld when there is no issue of material fact, the moving party is entitled to judgment as a matter of law, and when viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only come to one conclusion that is adverse to the nonmoving party. *Id.*, quoting *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 14} The hospital moved for summary judgment on the ground that Ebersole could not prove her case. Where that occurs, the moving party "bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St.3d

5.

280, 293 (1996). "The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case." *Id.* "Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." (Emphasis sic.) *Id.* "[I]f the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id.*

{¶ 15} Turning to the merits of this case, under Ohio law, "a visitor of a patient in a hospital is an invitee." *DeVault v. St. Charles Mercy Hosp.*, 2006-Ohio-1626, ¶ 13 (6th Dist.), citing *Bowins v. Euclid General Hosp. Assn.*, 20 Ohio App.3d 29, 30 (8th Dist. 1984). "A business owner owes its invitees a duty of ordinary care 'in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger.'" *Id.*, quoting *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203 (1985). "But a business owner is not an insurer of an invitee's safety." *Id.*, citing *Paschal* at 203.

{¶ 16} To recover against the hospital, Ebersole must establish

(1) that the premises owner through its officers or employees was responsible for the hazard complained of; or (2) that at least one of those persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or (3) that the danger had

6.

existed for a length of time sufficient to justify the inference that the failure to warn against it or remove it was attributable to a lack of ordinary care.

*Id.* at ¶ 14, citing *Johnson v. Wagner Provision Co.*, 141 Ohio St. 584, 589 (1943).

{¶ 17} The parties dispute whether a genuine issue of material fact exists as to each of the three avenues for recovery. As will be discussed below, the record demonstrates that Ebersole has no evidence to support her claim that the hospital created the hazard, had actual knowledge of the hazard, or had constructive knowledge of the hazard.

### A. No Evidence that the Hospital Created the Hazard

{¶ 18} First, there is no evidence in the record demonstrating a genuine issue of material fact regarding whether the hospital created the hazard. Ebersole advances two theories as to how the water came to be on the floor: (1) someone spilled the water, and (2) the water occurred as a result of condensation from hot food trays that were placed on the cart.

{¶ 19} Regarding the spill theory, the record contains Reed's testimony that nursing staff, nurse aides, and nurses place the used food trays in the cart, but long-stay patients can take their own trays. Another nurse, Cassandra Holden, similarly testified that it is the nursing staff or other hospital staff that typically use the food cart, but "it is not unheard of" that a patient or family member would use it." Both nurses were unaware of any spills in the area and Reed testified that she did not believe there would be a spill there "because we would clean it up after." Ebersole likewise testified that

7.

she did not know who spilled the water, noting only that she did not do it. Thus, the evidence shows only that no one knows who spilled the water, and there is no evidence that any hospital employee spilled it.

{¶ 20} Rather than presenting evidence that a hospital employee spilled the water, Ebersole postulates that the water occurred as a result of condensation from hot food trays that were placed on the cart. Specifically, she argues that "[the hospital] created the hazard when it created a process whereby [the hospital's] employees placed soiled food trays in the tray cart, which caused steam and condensation liquid to accumulate on the floor of The Hallway when opening and closing the door."

{¶ 21} In support of her position, Ebersole cites *Webb v. Breeze*, 2011-Ohio-6475 (8th Dist.), in which the Eighth District reversed an award of summary judgment to the business owner on a slip and fall claim. In that case, the plaintiff was injured when she slipped and fell on a puddle of water near a serving station at a Bahama Breeze restaurant. *Breeze* at ¶ 13. The record included the deposition testimony of a witness, Syverson, who saw the puddle of water where the plaintiff had fallen and noticed several ice water pitchers sitting on the counter of the serving station. Critically, Syverson testified that he had been in Bahama Breeze on several occasions prior to the day of the incident and had seen ice water pitchers on the serving counter and water on the floor each of those times. *Id.* at ¶ 14. Relying on Syverson's testimony, the Eighth District reasoned that "given Syverson's prior observation of ice water pitchers on the counter of the serving station and his observation of water on the floor on his several visits to the

8.

restaurant, a reasonable trier of fact could find that it was more probable that the liquid on the floor was created by Bahama Breeze's employees and not from another source." *Id.* at ¶ 15.[2]

{¶ 22} Ebersole also relies on *Moore v. Aldi, Inc.*, 1994 WL 95239 (2d Dist.), where the plaintiff sued for damages after a box fell on her head while she was attempting to retrieve a package of frozen chicken from the freezer compartment. The Second District noted that the plaintiff's deposition testimony established that she did not know how long the box had been in the freezer, how the box had gotten into the position that it occupied immediately prior to falling on her, nor did she have any information that any employees were aware of how or where the box was positioned prior to its fall. *Id.* at *1. In reversing the award of summary judgment, the appellate court determined that the plaintiff's testimony was sufficient to raise an issue of material fact as to whether the employees created the hazard. Specifically, it reasoned,

> From Ms. Moore's description of the box, it almost certainly belonged to Aldi. That Aldi personnel first placed the box in the freezer compartment is an almost inescapable inference. The box fell upon Ms. Moore, so it is beyond dispute that the box, before it fell, was a hazard. There was no evidence that anyone other than Aldi personnel handled the box once it had been placed in the freezer compartment.

*Id.*

---

[2] Although the Eighth District's reasoning discusses whether Bahama Breeze created the hazard, it framed the issue as whether Bahama Breeze had actual or constructive knowledge of the condition. *Id.* at ¶ 13, 17.

9.

{¶ 23} Ebersole argues that the present situation is similar to *Webb* and *Moore*. She contends that, like Syverson's testimony in *Webb*, her testimony regarding the condensation of the water is sufficient to explain how the water accumulated on the floor. In particular, she testified that she had prior experience working at nursing homes from which she learned that steam would emanate from food trays, form condensation on the cart door, and then fall onto the floor.[3] Further, she argues that the location of the cart, its frequent use for 24 patients, the location of the accumulation of water, the location of her fall, and her prior knowledge and experience with similar food tray carts establishes the same "inescapable inference" that the hospital created the hazard as seen in *Moore*.

{¶ 24} Upon review, assuming that Ebersole's explanation of how the water came to be on the floor is correct, the evidence she cites still does not establish an inference that the hospital created the hazard. In *Webb*, the evidence demonstrated a repeated and habitual liquid hazard caused by the business's use of the serving counter and the placement of the ice water pitchers. There is no similar evidence of a repeated or habitual liquid hazard from condensation in this case. Rather, the evidence demonstrates that this was the only time that it was ever noticed. The soiled food tray cart is consistently located in the same area and is used often throughout each day. Yet, no one testified to frequently observing liquid on the floor around the food cart. Ebersole, herself, walked by that food cart hundreds of times and testified, "There was nothing

---

[3] The hospital asserts that Ebersole's theory of condensation is flawed in that the food tray cart was used for soiled trays that would have already cooled.

10.

there going through, there was nothing there all the times before, all these times before."

In addition, she stated:

> Q. And you didn't see any puddle of water on your way to the kitchenette or back from the kitchenette prior to the fall, correct?
> A. No. I had seen papers on the floor, I've seen other objects on the floor. I've stopped and used a napkin to pick them up, or told the staff. I seen nothing.

Thus, unlike *Webb* and *Moore*, there is no basis to conclude that the manner in which the hospital used the food cart caused the water to condense and fall, and consequently there is no basis to infer that the hospital created the hazard.

{¶ 25} In sum, the hospital satisfied its initial burden to show that it did not create the hazard—either through a spill or through its process of using the soiled food tray cart— by pointing to the deposition testimony of Ebersole, Reed, and Holden, and Ebersole failed to satisfy her reciprocal burden to demonstrate that a genuine issue of material fact exists. Summary judgment, therefore, is appropriate for the hospital as to Ebersole's claim that the hospital created the hazard.

### B. No Evidence that the hospital had actual knowledge of the hazard

{¶ 26} Second, there is no evidence that the hospital had actual knowledge of the hazard. Ebersole argues that "[b]ecause [the hospital] created the hazardous condition, it had actual knowledge." Since, however, there is no evidence that the hospital created the hazardous condition, her argument must fail.

{¶ 27} Moreover, the deposition testimony of Reed and Holden demonstrates that neither of them knew about the water on the floor, and Ebersole has presented no

11.

evidence that any other hospital employee knew that the hazard existed. Summary judgment, therefore, is appropriate for the hospital as to Ebersole's claim that the hospital had actual knowledge of the hazard.

**C. No evidence that the hospital had constructive knowledge of the hazard**

{¶ 28} Finally, there is no evidence that the hospital had constructive knowledge of the hazard. "If a plaintiff cannot show that a defendant had actual knowledge of an existent hazard, evidence as to the length of time the hazard existed is necessary to support an inference that defendant had constructive notice." *Presley v. City of Norwood*, 36 Ohio St.2d 29, 32 (1973). The dangerous condition must have "existed for a sufficient time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care." *Id.*, quoting *Johnson v. Wagner Provision Co.*, 141 Ohio St. 584 (1943).

{¶ 29} Ebersole argues that she established a genuine issue of material fact as to whether the hospital had constructive knowledge through the testimony of Reed and Holden, who stated that the staff were responsible for housekeeping duties, which included cleaning the floor, putting things away, and making sure that there are no wet spots on the floor. Reed also testified that the hospital's "environmental services" staff cleans the floors periodically throughout the day. Based on this evidence, Ebersole contends that the hospital had a duty to perform reasonable inspections of the premises— including, in particular, looking for liquids and wet spots on the floor—and that it failed to conduct those inspections as demonstrated by the fact that she slipped and fell from

12.

liquid on the floor. Relying on *Bartlett v. Tan Pro Exp., LLC*, 2020-Ohio-2760 (6th Dist.), she asserts that "where [the hospital] failed to conduct such inspections, which would have revealed the existence of the hazard that caused Appellant's injuries, a question of fact remains as to whether [the hospital] had constructive knowledge of the hazard."

{¶ 30} In *Bartlett*, the plaintiff was injured when he allegedly slipped on an oily substance on a floor mat in a spray-tanning booth. *Id.* at ¶ 6. The evidence in that case included an employee's testimony that cleaning the tanning room was one of her responsibilities, and the company required her to clean each tanning room after each use by wiping down the tanning equipment, paper towel dispenser, seat, door handle, and floor mat. *Id.* at ¶ 11. She also agreed that the company had a duty to inspect spray tan rooms to ensure that the floors are dry and that there are no fluids or oils on the floor. *Id.*

{¶ 31} The trial court granted summary judgment to the company. In reversing the award of summary judgment, this court recognized a factual dispute on two issues: "(1) whether there was some type of liquid on the mat that caused Bartlett to fall, and (2) if Bartlett did slip on liquid, whether the liquid was on the mat because [the employee] failed to inspect and clean the room before Bartlett entered it." *Id.* at ¶ 25. As to the first issue, the record contained the conflicting testimony of Bartlett that there was oil on the floor, and the testimony of the employee that the floor was "spotless." *Id.* at ¶ 26. As to the second issue, again there was a conflict between Bartlett's testimony that he did not see anyone go in or out of the tanning room after the prior customer left, and the

13.

employee's testimony that she was "[p]retty confident that [she] had that room spotless" even though she did not say that she cleaned the room in between the prior customer and Bartlett. *Id.* at ¶ 28. Construing the evidence in Bartlett's favor, this court reasoned that "reasonable minds could conclude that Bartlett's injuries resulted from the presence of liquid on the mat that [the company] admits should have been cleaned, but was not actually cleaned, before he entered the spray tan room." *Id.* at ¶ 30.

{¶ 32} Ebersole attempts to apply *Bartlett* too broadly because in this case there is no evidence that the hospital failed to conduct reasonable inspections to discover the hazard. The theory of liability based on constructive knowledge requires a determination of whether the hazard would have been discovered by a reasonable inspection. *See Presley*, 36 Ohio St.2d at 32. *Bartlett* satisfies this requirement by recognizing that the company required an inspection of the room between each use, and therefore the employee's failure to do so would be a failure to perform a reasonable inspection. Here, in contrast, there is no evidence that the hospital defined when inspections must occur.

{¶ 33} *Bartlett* is somewhat unique in the realm of slip and fall cases in that the business had an established inspection schedule. In the majority of cases, courts look to the length of time that the hazard existed and the surrounding circumstances to determine if it would have been discovered in the exercise of ordinary care. For example, in *Strzesynski v. Franks Nursery & Crafts, Inc.*, 2002-Ohio-4348, ¶ 4 (6th Dist.), this court determined that there was no genuine issue of material fact as to whether the company had constructive knowledge where the hazard was present for less than one hour and the

plaintiff did not present any evidence that the company's inspection procedures were unreasonable for the size and traffic of its store. Or in *Combs v. First Natl. Supermarkets, Inc.*, 105 Ohio App.3d 27, 30 (8th Dist. 1995), the Eighth District determined that summary judgment was not appropriate as to constructive knowledge where the liquid was on the floor of the main aisle for 15 to 20 minutes. But where no evidence is presented as to the length of time that the hazard existed, courts find no genuine issue of material fact regarding constructive knowledge. *See May v. Kroger Co.*, 2017-Ohio-7696, ¶ 26 (5th Dist.) (listing cases).

{¶ 34} In the present case, the only evidence regarding how long the water was on the floor is Ebersole's statement that she did not see anything when she walked to the kitchenette four or five minutes before she fell. Without evidence of the length of time that the hazard existed, Ebersole cannot demonstrate a genuine issue of material fact that the hospital had constructive knowledge. *See Hudzik v. Boulevard Centre Co.*, 2017-Ohio-9345, ¶ 25 (11th Dist.) (no constructive knowledge where plaintiff "failed to produce competent evidence as to the length of time that the alleged defective condition existed"); *Swick v. Patty's Market & Dept. Store, Inc.*, 2016-Ohio-4984, ¶ 16 (2d Dist.) (Without evidence of how long the hazard existed "it is impossible to determine whether a premises owner should have discovered the hazard upon a reasonable inspection."); *Ray v. Wal-Mart Stores, Inc.*, 2013-Ohio-2684, ¶ 50 (4th Dist.) ("Without evidence concerning the length of time that the hazard existed, appellants are unable to establish that appellees should have discovered, and thus should have been aware of, the hazard.");

15.

*Price v. United Dairy Farmers, Inc.*, 2004-Ohio-3392, ¶ 12 (10th Dist.) (no genuine issue of material fact as to constructive notice where the plaintiff "did not present any evidence as to the length of time the alleged hazard existed on the store's floor before he fell"); *Harrison v. The Andersons, Inc.*, 2000 WL 819057, *2 (6th Dist.) ("[E]vidence of how long the hazard existed is mandatory in establishing a duty to exercise reasonable care.").

{¶ 35} Moreover, if the water came to be on the floor within four to five minutes of Ebersole's fall, this was not a sufficient amount of time to create a genuine issue of material fact, particularly where, as Ebersole described, the water was imperceptible. To hold otherwise would be to require the hospital to hyper-vigilantly examine all floors at all times, effectively imposing strict liability and violating the principle that a business owner is not an insurer of the invitee.

{¶ 36} Summary judgment, therefore, is appropriate for the hospital as to Ebersole's claim that the hospital had constructive notice of the hazard.

### IV. Conclusion

{¶ 37} Unfortunately, an accident happened in this case and Ebersole was injured when she slipped on a puddle of water. She, however, has failed to demonstrate a genuine issue of material fact exists that the hospital created the hazard, had actual knowledge of the hazard, or had constructive knowledge of the hazard. Accordingly, the trial court did not err when it awarded summary judgment in favor of the hospital on Ebersole's slip and fall claim. Her assignment of error is not well-taken.

**{¶ 38}** For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Ebersole is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.



Thomas J. Osowik, J.                  _____
<br>                                                    JUDGE

Christine E. Mayle, J.

_____

Charles E. Sulek, P.J.                         JUDGE
<br>CONCUR.

_____

JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.