[Cite as *Trout v. Shani DEV8, L.L.C.*, 2025-Ohio-832.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CHERYL TROUT,                                              :

     Plaintiff-Appellee,                              :

     v.                                                              :

                       No. 113965

JAY SHANI DEV8, LLC D.B.A.                           :
MR. HERO, ET AL.,

                                        :

     Defendants-Appellants.

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED
**RELEASED AND JOURNALIZED:** March 13, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-955789

---

### *Appearances:*

Tittle & Perlmuter, Kathleen R. Harris, and Scott D. Perlmuter, *for appellee*.

Carr Law Office, LLC, and Adam E. Carr, *for appellant*.

DEENA R. CALABRESE, J.:

{¶ 1} Defendant-appellant Jay Shani DEV8, LLC d.b.a. Mr. Hero ("Jay Shani") appeals the jury's verdict and award in favor of plaintiff-appellee Cheryl Trout ("Trout") stemming from her slip-and-fall accident in the Mr. Hero restaurant on Smith Road in Brook Park, Ohio. After a review of the evidence presented at trial

and in light of applicable law, we find Trout failed to present any evidence of constructive notice of the alleged hazard. Therefore, we reverse the trial court's denial of Jay Shani's motion for judgment notwithstanding the verdict.

## I. Facts and Procedural History

{¶ 2} The following summary of events was agreed to by the parties and read by the judge at the start of the trial:

> The plaintiff, Cheryl Trout, alleges that she slipped and fell inside a Mr. Hero restaurant while walking to the counter to pick up food after having ordered the food a few minutes previously while standing at the same counter. Ms. Trout blames her fall on an accumulation of liquid on the floor. Jay Shani Dev 8, the company, which is the defendant in this case, denies any liquid was on the floor. The Mr. Hero restaurant was operated by Jay Shani Dev 8, LLC, under a franchise agreement with Mr. Hero. The plaintiff, Cheryl Trout, claims to have fractured her right kneecap. She additionally seeks damages for loss of consortium to her late husband, David Trout, who was not present in the restaurant at the time of her fall.

(Tr. 71-72.)

{¶ 3} Trout testified at trial that on June 7, 2021, she went to the Mr. Hero on Smith Road, walked up to the counter to place her order and pay and then walked to the front of the store and sat in a chair by the window. (Tr. 875.) She did not notice anything wrong with the floor the first time she walked across it. (Tr. 920.) Trout testified that another customer went up to the counter to get his order and that she would have "been aware of the commotion" and seen if he had spilled "a whole drink." (Tr. 924.) Trout then went up to the counter to get her order, taking a slightly different route up to the counter but in the same general area where she had previously walked. (Tr. 926-928.) Trout slipped on her way up to the counter

and landed on her right knee. (Tr. 887.) After her fall, she sat on the floor and felt "something wet soaking into [her] pants." (Tr. 880, 929.) The store was clean other than the spot where she fell, and she did not notice any liquid on the floor either before or after her fall. (Tr. 926, 930-931.) Trout suffered a fractured patella on her right kneecap that ultimately required two surgeries.

{¶ 4} The Mr. Hero franchise where Trout fell is owned and operated by Jay Shani, and Restaurant Developers Corporation ("R.D.C.") is the franchisor. (Tr. 613.) Jay Shani is owned by Viren Patel ("Viren"), Archna Patel ("Archna"), and Mike Patel. Viren and Archna, who are brother and sister, were both working at the Mr. Hero location on the day Trout fell. (Tr. 612.) Also working with them that day was their cousin Meet Patel ("Meet"). (Tr. 419.) At the time Trout fell, Viren was in the back operating the grill and training Meet, and Archna was handling customers at the counter. (Tr. 81, 191, 419.) Because of COVID-19 restrictions, the chairs and tables had been moved to the side and were not available for dine-in use. (Tr. 497-498.)

{¶ 5} Archna testified she did not see anything on the floor that would have caused a fall either before or after Trout fell and that she would have seen a spill from her position at the cash register. (Tr. 500, 567.) Viren inspected the floor after the fall and did not see any liquid substance. (Tr. 506.)

{¶ 6} Viren testified that after Trout's fall, he viewed the surveillance-camera footage starting about five minutes before she fell to the time of the fall. He perceived that the video did not show anyone spill anything on the floor during that

five-minute time frame. (Tr. 479-481.) He also did not see anything in the video that would have caused a fall. (Tr. 479.) When asked if "someone could have been in there 20 minutes before and spilled and [he] wouldn't have seen it by looking at the video," Viren answered "Yes." (Tr. 482.) The surveillance video was never saved, so after seven days it was automatically overwritten. (Tr. 483.) Viren is the only person that viewed the surveillance footage before it was overwritten.

{¶ 7} On February 7, 2022, Trout filed a second amended complaint alleging a claim of negligence against Jay Shani and a loss-of-consortium claim on behalf of her husband David Trout ("David"). A claim against R.D.C. was later dismissed. Following David's death, Trout was substituted as executor of his estate.

{¶ 8} Following protracted litigation, the case was tried before a jury beginning on February 5, 2024. Throughout the trial, there were continual references by Trout's counsel as to whether this Mr. Hero location followed the "safety rules" derived from R.D.C.'s operating standards manual given by R.D.C. to the franchise owners. Specifically, the testimony centered around the manual's requirement that employees clean during "slow times," the existence and placement of rugs on the floor, and employee training.

{¶ 9} Jay Shani moved for a directed verdict after Trout's counsel's opening statement, arguing "there was no evidence as to how the liquid got there or how long it was there." (Tr. 321-322.) The trial court denied the motion, pointing out that no evidence had yet been presented. (Tr. 323.) A second motion for a directed verdict was made, and denied, at the conclusion of the trial.

{¶ 10} After both parties rested, the jury returned a verdict finding Jay Shani negligent. On February 12, 2024, the jury awarded Trout $1,300,000 in noneconomic damages. On March 11, 2024, Jay Shani filed a motion for judgment notwithstanding the verdict or for a new trial, arguing that Trout failed to provide evidence that Jay Shani had constructive notice of a foreign substance on the floor that caused Trout's fall. The motion was denied without hearing on April 26, 2024. (Journal entry Apr. 26, 2024.)

{¶ 11} Appellant filed the instant appeal raising four assignments of error.

1. The trial court erred in failing to apply Ohio's statutory damages cap.

2. The trial court erred in failing to enter judgment for the appellant based on the failure of the appellee to demonstrate that the appellant had actual or constructive notice the substance on which the appellee fell.

3. The trial court erred in allowing the jury to decide the case based on a series of safety rules invented by the appellee instead of following Ohio law on ordinary reasonable care for a negligence claim.

4. The trial court erred in failing to instruct the jury that a corporation is entitled to the same treatment as a natural person under Ohio law.

## II. Law and Analysis

### A. Constructive Notice

{¶ 12} We begin by reviewing Jay Shani's second assignment of error because we find it is dispositive of this appeal. In the second assignment of error, Jay Shani argues that the trial court erred in failing to enter judgment in its favor based on Trout's failure to demonstrate that it had actual or constructive notice of the substance on which Trout fell. Jay Shani specifically argues that the trial court erred

when it did not grant Jay Shani's oral motion for directed verdict at the conclusion of Trout's opening statement, and again when it did not grant Jay Shani's motion for directed verdict and motion for judgment notwithstanding the verdict after the conclusion of the trial. Both motions requested judgment in Jay Shani's favor, arguing there was no evidence showing Jay Shani had actual or constructive notice of the substance on the floor prior to Trout's fall.

## B. Motion for Directed Verdict (After Opening Statements)

{¶ 13} First, we consider the motion for a directed verdict. A motion for directed verdict can be made "on the opening statement of the opponent." Civ.R. 50(A)(1). A trial court shall sustain a motion for a directed verdict when "after construing the evidence most strongly in favor of the party against whom the motion is directed, [the court] finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ.R. 50(A)(4). Counsel's opening statements are not evidence. *Morton v. Murray*, 2018-Ohio-5178, ¶ 8 (8th Dist.), citing *L&N Partnership v. Lakeside Forest Assn.*, 2009-Ohio-2987 (10th Dist.). "Only if the opening statement shows that a party is completely unable to sustain a cause of action should the court take the case away from the jury by directing a verdict." *Parrish v. Jones*, 2013-Ohio-5224, ¶ 32. "Since a directed verdict is a question of law, our review is de novo." *Geletka v. MetroHealth Sys.*, 2023-Ohio-934, ¶ 26 (8th Dist.), citing *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 2002-Ohio-2842, ¶ 4.

{¶ 14} In this case, Jay Shani argues that the trial court erred when it did not grant the motion for a directed verdict after Trout's opening statement. Upon a careful review of the transcript, we conclude that nothing in the opening statement revealed that Trout was completely unable to sustain a cause of action for negligence. Therefore, we find the court did not err in denying Jay Shani's motion for a directed verdict following Trout's opening statement.

### C. Motion for Directed Verdict and Motion for Judgment Notwithstanding the Verdict (At the Conclusion of Trial)

{¶ 15} Next, we consider Jay Shani's motion for directed verdict and judgment notwithstanding the verdict at the conclusion of the trial. "The standard for granting a motion for judgment notwithstanding the verdict is the same as that for granting a motion for directed verdict," and appellate review is also the same for both motions. *Ringhand v. Chaney*, 2014-Ohio-3661, ¶ 7 (12th Dist.). "When reviewing a motion for judgment notwithstanding the verdict, we employ a de novo standard of review." *Gerston v. Parma VTA, LLC*, 2024-Ohio-3005, ¶ 41 (8th Dist.), citing *Grau v. Kleinschmidt*, 31 Ohio St.3d 84, 90 (1987). In reviewing a ruling on a motion for judgment notwithstanding the verdict,

> "[t]he evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied."

*Id.*, quoting *Posin v. A.B.C. Motor Court Hotel*, 45 Ohio St.2d 271, 275 (1976). The trial court does not consider either the weight of the evidence or the credibility of

the witnesses when ruling on a motion for judgment notwithstanding the verdict. *Shields v. Bur. of Workers' Comp.*, 2023-Ohio-1368, ¶ 34 (8th Dist.), citing *Posin* at 275.

{¶ 16} To establish negligence, a plaintiff must show the existence of a duty, a breach of that duty, and an injury proximately caused by the breach. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680 (1998). "'The status of a person who enters another's property defines the scope of the legal duty owed to that person.'" *Richie v. Home Depot*, 2023-Ohio-68, ¶ 11 (8th Dist.), quoting *Buonopane v. M. Co.*, 2022-Ohio-4210, ¶ 15 (8th Dist.), citing *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315 (1996). "'Property owners owe invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition[.]'" *Richie* at ¶ 11, quoting *Buonopane* at ¶ 15, citing *Naso v. Victorian Tudor Inn, L.L.C.*, 2022-Ohio-1065, ¶ 9 (8th Dist.). "Whether a duty exists is a question of law for the court to determine." *Webb v. Breeze*, 2011-Ohio-6475, ¶ 9 (8th Dist.), citing *Frankmann v. Skyline Mgt., LLC*, 2007-Ohio-3922, ¶ 5 (8th Dist.), citing *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989).

{¶ 17} In *Burke v. Giant Eagle, Inc.*, 2017-Ohio-4305 (8th Dist.), we stated:

> In order for a business invitee to recover for an injury sustained in the context of this case, the invitee is required to show that an employee of the business was negligent in creating a hazard, had actual notice of a hazard and failed to remedy it, or had constructive notice by allowing a hazard to exist for an unacceptable amount of time such that the hazard should have been remedied, but was not.

*Id.* at ¶ 7, citing *Kokinos v. Ohio Greyhound, Inc.*, 153 Ohio St. 435, 436 (1950).

**{¶ 18}** "The Ohio Supreme Court has held that 'it is essential that the evidence show [the hazard] continued for a period of time sufficient to charge the defendant with constructive notice thereof.'" *Madaras v. Applebee's Neighborhood Grill & Bar*, 2025-Ohio-169, ¶ 26 (8th Dist.), quoting *Kokinos* at 438. This court has previously stated that "an injured party may not rely on mere speculation and conjecture to attempt to demonstrate that a foreign substance had been present for a sufficient period of time to give a shopkeeper or his employees constructive notice of it." (Cleaned up.) *Richie* at ¶ 13. "If [a premises owner] did not have actual or constructive notice of the defect — the [alleged liquid substance on the floor] — it had no duty to warn [a business invitee]." *Washington v. Outrage, Inc.*, 2021-Ohio-2263, ¶ 21 (8th Dist.); *accord Madaras* at ¶ 28.

**{¶ 19}** In this case, there is no dispute that Jay Shani did not place the liquid substance on the floor and did not have actual notice of it being on the floor. The question is whether Jay Shani had constructive notice of the substance on the floor prior to Trout's fall.

**{¶ 20}** Trout argues that *Hardesty v. P.J. Bordner*, 1994 Ohio App. LEXIS 6148 (5th Dist. Dec. 29, 1994), is on point, but the facts in *Hardesty* are so dissimilar that it is not applicable to this case. In *Hardesty*, the plaintiff slipped and fell on water in a grocery store. The existence of the puddle of water was never disputed and another customer testified the puddle was there five to ten minutes before plaintiff fell. Thus, the plaintiff in *Hardesty* put forth evidence as to how long the substance was on the floor prior to the accident, and therefore, the court held that

the plaintiff established constructive notice. Here, we have a dispute that there was anything on the floor and no evidence as to how long it was allegedly on the floor prior to Trout's fall.

{¶ 21} In the instant case, Trout attempts to establish a time frame based on the five-minute mark where Viren started viewing the surveillance footage, and Viren's testimony that someone could have spilled something 20 minutes before. However, Trout's analysis relies on conjecture to postulate a substance must have been on the floor for 5 to 20 minutes before Trout fell. Viren testified that the five minutes of video he watched did not show anyone spill anything and stated the video never showed any liquid substance on the floor. From this testimony, combined with her own testimony that while she did not notice anything on the floor, she felt "something wet" soak into her pants after her fall, Trout speculates that a spill must have occurred before that five-minute mark. Likewise, Viren's testimony that someone could have spilled something 20 minutes before the fall is pure speculation. Even the theory that the liquid substance allegedly on the floor was the result of a spill, which Trout asserts repeatedly throughout the case, is speculation.

{¶ 22} Trout also argues that under *Smith v. Regal Cinemas, Inc.*, 2005-Ohio-4703 (8th Dist.), she does not have to prove the amount of time the substance was on the floor to establish constructive notice. In *Smith*, there was no dispute that there was a substance on the floor. The plaintiff testified the substance she slipped on was sticky, and the court concluded it could have been there for a sufficient amount of time to dry and become sticky. Thus, plaintiff put forth some evidence to

suggest the substance was there long enough to be discovered by a reasonable inspection. Here, Trout has put forth no evidence to suggest a substance was on the floor for any length of time.

{¶ 23} The Sixth District recently addressed constructive notice in *Ebersole v. Toledo Hosp.*, 2025-Ohio-260 (6th Dist.). The plaintiff in *Ebersole* slipped and fell on a wet spot on a hospital hallway floor she had traversed four or five minutes prior without issue. She did not see anything on the floor on her previous trip down the hallway. There was no dispute that there was water on the floor when plaintiff fell. She argued that she established constructive notice by presenting evidence that hospital staff were responsible for housekeeping duties, including cleaning the floor and making sure there were no wet spots on the floor. The court pointed out that the "theory of liability based on constructive knowledge requires a determination of whether the hazard would have been discovered by a reasonable inspection." *Id.* at ¶ 32. However, even though the *Ebersole* Court discussed staff housekeeping duties, it still recognized that established Ohio law required the plaintiff to show how long a hazard existed to establish constructive notice. The court stated that if

> water came to be on the floor within four to five minutes of [plaintiff's] fall, this was not a sufficient amount of time to create a genuine issue of material fact, particularly where, as [plaintiff] described, the water was imperceptible. To hold otherwise would be to require the hospital to hyper-vigilantly examine all floors at all times, effectively imposing strict liability and violating the principle that a business owner is not an insurer of the invitee.

*Id.* at ¶ 35.

{¶ 24} In this case, even with testimony about R.D.C. operating manual "rules," Trout must still demonstrate how long the liquid substance was present prior to the fall. In addition, even if Trout was able to provide evidence that the liquid substance was on the floor for at least five minutes, we agree with the Sixth District that five minutes of imperceptible water on the floor is not a sufficient amount of time to establish constructive notice. To hold otherwise would be holding Jay Shani to strict liability.

{¶ 25} Trout has not established constructive notice because she has not demonstrated how long a liquid substance was allegedly on the floor prior to her fall. *See Calabrese v. Romano's Macaroni Grill*, 2011-Ohio-451 (8th Dist.) (No constructive notice where plaintiff attempted to establish it by relying on "mere speculation," arguing her acquaintances noticed wet floor signs and saw water on the floor after her fall); *Hudzik v. Blvd. Ctr. Co.*, 2017-Ohio-9345, ¶ 25 (11th Dist.) (no constructive notice where plaintiff did not produce evidence as to how long the alleged defective condition existed); *Swick v. Patty's Market & Dept. Store, Inc.*, 2016-Ohio-4984, ¶ 16 (2d Dist.) (no constructive notice where a plaintiff tried to establish it by asserting a store employee stated, "I bet that's ham juice from that ham" after her fall); *Ray v. Wal-Mart Stores, Inc.*, 2013-Ohio-2684, ¶ 50 (4th Dist.) (no constructive notice "[w]ithout evidence concerning the length of time that the hazard existed"); *Price v. United Dairy Farmers, Inc.*, 2004-Ohio-3392, ¶ 12 (10th Dist.) (no constructive notice where the plaintiff "did not present any evidence as to the length of time the alleged hazard existed on the store's floor before he fell").

{¶ 26} Viewing the evidence adduced at trial most strongly in favor of Trout, there is nothing in the record demonstrating Jay Shani had constructive notice of a foreign substance on the floor. We find that Jay Shani's second assignment of error is well taken and reverse the trial court's denial of the motion for judgment notwithstanding the verdict.[1] Because the second assignment of error is dispositive of the case, we decline to address the remaining assignments of error.

{¶ 27} Judgment reversed.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

DEENA R. CALABRESE, JUDGE

LISA B. FORBES, P.J., and
SEAN C. GALLAGHER, J., CONCUR

---

[1] Alternatively, the trial court could have granted the motion for directed verdict because the two motions are identical and would have yielded the same result.