[Cite as *Madras v. Applebee's Neighborhood Grill & Bar*, 2025-Ohio-169.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

DANEEN MADARAS,                          :

    Plaintiff-Appellant,          :

                          No. 113989

    v.                                    :

APPLEBEE'S NEIGHBORHOOD            :
GRILL & BAR, ET AL.,

                            :

    Defendants-Appellees.

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 23, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-975154

---

### *Appearances:*

Paulozzi Co., L.P.A., and Todd O. Rosenberg, *for appellant*.

Roetzel & Andress, L.P.A., Nicholas A. Adair, and Christopher E. Cotter, *for appellee* Apple Ohio LLC.

LISA B. FORBES, J.:

{¶ 1} Plaintiff-appellant Daneen Madaras ("Madaras") filed the instant appeal of the trial court's grant of summary judgment in favor of defendant-appellee Apple Ohio LLC, stemming from injuries sustained during a slip and fall on

Applebee's' premises. After a thorough review of the law and facts, this court affirms the decision of the trial court.

## I. Procedural History

{¶ 2} Madaras filed a complaint alleging that on February 17, 2021, she sustained injuries on the premises of an Applebee's Neighborhood Grill & Bar, later identified as owned and operated by Apple Ohio LLC ("Applebee's") at 6871 Pearl Road in Middleburg Heights, Ohio, due to the negligence of Applebee's. In her complaint, Madaras alleged that "[t]here was a flat overhang above the entrance that had collected snow and ice and was dripping water onto the sidewalk forming black ice." Plaintiff claimed she slipped on the unnatural black ice that was not visible under the circumstances and that "[t]he unsafe and defective area constituted a dangerous condition which was either created by the Defendants, should have been known by the Defendants, and which the Defendants should have corrected the condition or warned of its existence."

{¶ 3} Applebee's filed its answer, discovery proceeded pursuant to the trial court's schedule, and Applebee's ultimately filed a motion for summary judgment. On May 21, 2024, the trial court granted summary judgment in favor of Applebee's, issuing a written opinion, in which the trial court concluded that

> [a]n isolated patch of black ice that is hard to see on a sidewalk does not establish a condition substantially more dangerous than a reasonable person could have anticipated in winter in Ohio. There is no evidence that a substantially more dangerous condition existed because the patch of black ice concealed another danger. The patch of black ice on Applebee's sidewalk is not an unnatural accumulation of ice.

{¶ 4} Madaras timely appealed, assigning a single error for our review:

The trial court erred by holding that there was no liability for the unnatural formation of black ice due to dripping from an awning.

## II. Factual History

### A. Madaras's Deposition

{¶ 5} Madaras testified that at around 3:00 p.m. on February 17, 2021, she took her mother to a hair appointment and, while waiting for her mother to finish her appointment, she decided to place and pickup a to-go order at Applebee's, which was in the same shopping center as the salon. Madaras testified that there was snow on the ground, that it was "a very cold day . . . . [v]ery sunny bright cold day," and that the temperature was below freezing. At her deposition, Madaras explained that the incident occurred in full daylight and that she was not experiencing any visibility issues. Madaras indicated that she had lived in Ohio for her "whole life" and agreed that she had experienced over 40 years of "Cleveland winters."

{¶ 6} Madaras walked to Applebee's from the hair-salon parking lot and entered through the front door. During her deposition, she indicated that she did not appreciate or observe any ice or snow on the ground. She placed her order, exited the restaurant through the same door that she had entered, and then walked to a nearby pet-supply store as she waited for her food to be prepared.

{¶ 7} "When Madaras returned to Applebee's, she again went through the same front door. She again denied observing any ice on the ground." After retrieving her to-go order, Madaras, now holding her order, proceeded to leave Applebee's through the same door. Her deposition testimony indicated that as she

exited the door, "[she] took a few steps and that's when [she] fell." After she fell, she was unable to bear weight on her ankle.

{¶ 8} Madaras explained that she believed her fall was caused by water dripping from the flat awning over the door that had refrozen into what she characterized as "black ice" that she was unable to see, observe, or appreciate until she slipped and fell on it.

> [APPLEBEE'S' COUNSEL]: Well, my question is, did you see anything on the ground?
>
> [MADARAS]: I'll say no because I don't — other than slipping on the ice I don't recall anything else.
>
> [APPLEBEE'S' COUNSEL]: And did you look at the ground where you fell after you fell?
>
> [MADARAS]: No, I know I was sitting on ice.
>
> . . . .
>
> [APPLEBEE'S' COUNSEL]: So what you're saying here today is the area that you walked over walking into the restaurant and walking out to the pet store had no ice over it?
>
> [MADARAS]: I didn't see the ice.

## B. Kelly Teufel's Deposition

{¶ 9} Kelly Teufel ("Teufel"), the assistant manager on duty at the time of Madaras's fall, testified that she was not aware of any problems with melting snow dripping from the awning. Teufel indicated that she had not heard any complaints or concerns surrounding any dripping from the awning or slipperiness in that general area prior to Madaras's fall.

{¶ 10} When asked how often she would go outside to inspect whether there was ice or snow outside of the front entrance, Teufel responded that this was dependent on the weather conditions and that there was no set schedule or guideline for this. She indicated, however, that "we check it often" when the snow is "coming down hard."

### C. Lisa Prioletti's Deposition

{¶ 11} Lisa Prioletti ("Prioletti"), another manager at that Applebee's, indicated that she had gone through the subject door under the awning "[s]omewhere between 50 and 100 times" during her tenure at Applebee's and could not recall ice forming outside of that door "unless it wasn't shoveled and salted." She did not recall Applebee's having a specific policy for the removal of snow and ice from sidewalks in front of the Applebee's.

## III. Law and Analysis

{¶ 12} We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law. *Id.* On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). A fact is

material if it "'might affect the outcome of the suit under the governing law' of the case." *Oko v. Cleveland Div. of Police*, 2021-Ohio-2931, ¶ 23 (8th Dist.), quoting *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993). "A factual dispute is 'genuine' only if 'it allows reasonable minds to return a verdict for the nonmoving party.'" *Huntington Natl. Bank v. Blount*, 2013-Ohio-3128, ¶ 32 (8th Dist.), quoting *Sysco Food Servs. v. Titan Devs.*, 1995 Ohio App. LEXIS 4762, * 7 (9th Dist. Oct. 25, 1995).

{¶ 13} To prevail on a premises-liability claim, Madaras was required to prove (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting from that breach. *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984). At issue in this case is the existence of a duty, which is a matter of law for the court to decide. *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989).

{¶ 14} In her sole assignment of error, Madaras contests the trial court's grant of summary judgment, raising three separate issues: (1) whether the ice that Madaras slipped on was open and obvious; (2) whether the ice that Madaras slipped on was an unnatural accumulation; and (3) whether Applebee's had actual or constructive notice of the "defect" that Madaras slipped on.

## A. Open-and-Obvious Doctrine

{¶ 15} "Where a danger is not latent or hidden, but instead is 'open and obvious,' a landowner or business owner owes no duty of care to individuals lawfully on the premises." *Jackson v. J-F Ents.*, 2011-Ohio-1543, ¶ 16 (6th Dist.), quoting *Armstrong v. Best Buy Co.*, 2003-Ohio-2573, syllabus. Generally, "[t]he dangers

from natural accumulations of ice and snow are ordinarily open and obvious." *Jackson* at *id.*, citing *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968), paragraph two of the syllabus. "[A]n owner of property is not liable for injuries to business invitees who slip and fall on natural accumulations of ice and snow." *LaCourse v. Fleitz*, 28 Ohio St.3d 209, 210 (1986). "Thus, a landlord is under no duty to take action to mitigate the dangers posed by accumulated ice and snow, and may justifiably assume that the [business invitee] will apprehend the danger and act to ensure his own safety." *Id.* This doctrine, known as the "no-duty winter rule," provides that there is no duty to warn patrons about natural accumulations of ice and snow. *Brinkman v. Ross*, 68 Ohio St.3d 82, 83-84 (1993); *Jeswald v. Hutt*, 15 Ohio St.2d 224 (1968), paragraph one of the syllabus; *Abercrombie v. Byrne-Hill Co., Ltd.*, 2005-Ohio-5249, ¶ 12 (6th Dist.); *Miller v. Tractor Supply Co.*, 2011-Ohio-5906, ¶ 8 (6th Dist.).

{¶ 16} Here, the no-duty winter rule would relieve Applebee's of liability unless the undisputed evidence in the record demonstrates that Applebee's was actively negligent in permitting or creating an unnatural accumulation of ice, or that Applebee's had actual or implied notice that the natural accumulation of ice created a condition substantially more dangerous than Madaras should have anticipated. *See Mubarak v. Giant Eagle, Inc.*, 2004-Ohio-6011, ¶ 20 (8th Dist.).

**B. Unnatural Accumulation**

{¶ 17} Appellant argues that Madaras slipped on ice that accumulated due to man-made, not natural, causes, created by Applebee's, which would establish a duty

on the part of Applebee's. "An 'unnatural' accumulation is one created by causes and factors other than natural meteorological forces," which "include inclement weather conditions, low temperatures, drifting snow, strong winds, and freeze cycles." *Thatcher v. Lauffer Ravines, L.L.C.*, 2012-Ohio-6193, ¶ 17 (10th Dist.). Thus, "unnatural accumulations are caused by the intervention of human action doing something that would cause ice and snow to accumulate in unexpected places and ways." *Id.*, citing *Porter v. Miller*, 13 Ohio App.3d 93 (6th Dist. 1983). But "[s]alting or shoveling does not turn a natural accumulation into an unnatural accumulation." *Cunningham v. Thacker Servs., Inc.*, 2003-Ohio-6065, ¶ 14 (10th Dist.).

{¶ 18} Here, Madaras claims that "the black ice that formed from the dripping awning was on a virtually dry sidewalk and was not noticeable since it was black ice that had formed due to the drip in that spot." Madaras's proffered expert report, authored by Richard L. Zimmerman of ZZ Design, Inc., concluded that the awning was structurally deficient and created a hazard because it did not have "gutters, downspouts or other means of collecting, channeling, or disposing of rainwater, snowmelt water, or icemelt water[.]" Zimmerman opined that without these "collection" mechanisms attached to the awning, the "resultant dripping and draining of that water . . . upon the relatively flat yet cracked, uneven and flawed pavement walking surfaces into ponds and puddles that persisted . . ." caused the eventual freezing of the water into "unnatural accumulations of imperceptible ice."

{¶ 19} In support of her argument, Madaras directs us to this court's opinion in *Tyrrell v. Invest. Assocs., Inc.*, 16 Ohio App.3d 47 (8th Dist. 1984), claiming that the facts are "virtually identical" to the facts in this matter. We disagree.

{¶ 20} In *Tyrrell*, as in the instant matter, the plaintiff sustained injuries after slipping and falling on a patch of ice in front of a store. However, unlike here, the testimony at trial in *Tyrell* established that "the store occasionally had problems with melting snow and rain dripping onto that area [on the sidewalk] from the building's canopy." *Id.* at 48. The canopy was damaged and discolored directly above the sidewalk area where the plaintiff fell. *Id.* The *Tyrell* Court explained that "plaintiff's evidence described ice formed by nonnatural accumulations in an area which differed markedly from surrounding conditions." *Id.* at 49. The court noted the store's employees had not created the hazard, and were not aware of the

> specific icy patch where plaintiff reportedly fell before the fall occurred. However, there was evidence that the employees knew about the hazard from the dripping canopy which periodically created that condition. . . . With knowledge about canopy and weather conditions that produced such nonnatural icy patches, their reasonable care might include use of rock salt or other safety procedures.

*Id.* Accordingly, the *Tyrell* Court reversed the trial court's directed verdict in favor of the defendant.

{¶ 21} Here, there was no evidence of the Applebee's awning being in disrepair. Rather, Madaras's expert, Zimmerman, concluded that the Applebee's awning is "deficient" because it does not have an attached drainage system. However, *Tyrell* does not stand for the legal proposition that all flat awnings or

canopies without drainage systems are defective or in a state of disrepair. The only evidence here is that there was an icy spot on the sidewalk on which Madaras fell. Aside from speculation that the ice spot resulted from snowmelt dripping from the awning, no evidence was presented that anyone had observed snow atop the awning or water from snowmelt dripping onto that spot on the sidewalk either on the day Madaras fell or any other time. None of the facts in the record point to a nexus between the man-made canopy and the patch of ice that Madaras slipped on.

{¶ 22} Madaras also refers us to several cases claiming that "freezing and thawing cycles generally have been found to cause unnatural accumulation." Madaras argues that the ice on the ground formed due to a "different freezing and thawing cycle than the surrounding area, and in a situation 'where melting snow and rain accumulates in an area due to the presence of a man-made structure . . . .'" quoting *Nawal v. Clearview Inn*, 1994 Ohio App. LEXIS 3409, *8-9 (8th Dist. Aug. 4, 1994). Again, we disagree.

{¶ 23} This court has recognized that, in the absence of evidence supporting Applebee's' negligence, "the freeze and thaw cycle accompanying the winter climate in northeastern Ohio remains a natural accumulation." *Bailey v. St. Vincent DePaul Church*, 1997 Ohio App. LEXIS 1884, *8 (8th Dist. May 8, 1997). Furthermore, as the Ninth District recently recognized, "[i]t is well-settled that natural rainwater, groundwater, or snow and ice does not become an unnatural accumulation when it travels from a man-made elevated surface to a lower surface." (Citations omitted.) *Johnson v. CBRE, Inc.*, 2023-Ohio-3518, ¶ 29 (9th Dist.) (Ohio's no-duty winter rule

applied to bar plaintiff's negligence claim where runoff from a man-made helipad onto a lower lying parking lot formed into ice on which plaintiff slipped and fell).

{¶ 24} Accordingly, we find that, based on the undisputed facts in the record, the hazard that Madaras slipped on was not an unnatural accumulation.

### C. Actual and/or Constructive Notice

{¶ 25} Madaras also contends that Applebee's "had actual or constructive notice of the ice on which [she] slipped . . . based on the location of the ice near the entrance to the restaurant. . . ." Madaras elaborates that if the employees saw the ice, then the notice is actual but "even if they did not see it, they had constructive notice of it" and cites to Zimmerman's conclusion that Applebee's "thus had, or should have had, actual prior notice of the unsafe conditions, for they would have been replicated repeatedly over successive winter weather cycles, wear and use."

{¶ 26} As noted, an exception to the "no-duty winter rule" may apply if Applebee's "is shown to have had notice, actual or implied, that a natural accumulation of snow and ice on [its] premises has created a condition substantially more dangerous than a business invitee should have anticipated by reason of the knowledge of conditions prevailing generally in the area. . . ." *Bailey* at *5. The Ohio Supreme Court has held that "it is essential that the evidence show [that the hazard] continued for a period of time sufficient to charge the defendant with constructive notice thereof." *Kokinos v. Ohio Greyhound, Inc.*, 153 Ohio St. 435, 438 (1950).

{¶ 27} At the outset, we note that the evidence in the record does not indicate that the icy patch that Madaras fell on was "substantially more dangerous than

[Madaras] should have anticipated" based on her experience with Cleveland winters. As noted, Madaras testified that she had over 40 years of experience with winter in Cleveland. "By itself, the formation of black ice on pavement is not a condition substantially more dangerous than a business invitee should anticipate." *Johnson*, 2023-Ohio-3518, at ¶ 33, citing *Miller*, 2011-Ohio-5906, at ¶ 14 (6th Dist.); *Burton v. CFA Med. Bldg. & Garage*, 1999 Ohio App. LEXIS 2776, *2 (8th Dist. June 17, 1999). Beyond allegations and speculation, there are no material facts in the record demonstrating a nexus between the icy patch and the canopy.

{¶ 28} The only evidence in the record before us demonstrating Applebee's' knowledge as to the conditions of the area where Madaras fell is from Teufel who had never observed water dripping from the awning nor had she personally heard any complaints about water dripping from the awning. Based on this evidence, Applebee's did not have actual notice. Moreover, this undisputed evidence is in stark contrast to that which was sufficient to find constructive notice in *Kokinos* where the subject hazard was a dried pile of vomit; the fact that it was dry indicated that it had persisted for a while. *Id.* Here, the record does not contain evidence that the awning was dripping on the date Madaras slipped or that the awning had a known or persistent dripping problem. There was, furthermore, no evidence that Applebee's, through its employees, knew that there was a potentially unsafe condition outside because no one else had complained or slipped in that area.

## IV. Conclusion

{¶ 29} After careful consideration of the record, Madaras's sole assignment of error is overruled. We find that the trial court did not err in granting summary judgment for Applebee's. Applebee's demonstrated that there is no issue of material fact as to the duty owed to Madaras in the circumstances that led to her fall. The hazard that Madaras slipped on was open and obvious, did not constitute an unnatural accumulation, and was not a condition of which Applebee's had actual or constructive notice.

{¶ 30} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LISA B. FORBES, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR