[Cite as *Housel v. Winking Lizard Tavern*, 2026-Ohio-1970.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

MARY BETH HOUSEL,                    :

    Plaintiff-Appellant,      :

                         No. 115549

    v.                        :

WINKING LIZARD TAVERN, ET AL.,   :

    Defendants-Appellees.     :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 28, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-105461

---

### *Appearances:*

Flowers & Grube and Paul W. Flowers; Robert V. Housel
Co., L.P.A., and Robert V. Housel, *for appellant.*

Gallagher Sharp LLP, Thomas J. Cabral, and Jennifer L.
Gardner, *for appellee* Winking Lizard Tavern.

Sutter O'Connell Co., James M. Popson, Timothy J.
Murray, and Kevin W. Kita, *for appellee* Cintas
Corporation No. 2.

LISA B. FORBES, P.J.:

{¶ 1} Mary Beth Housel ("Housel") appeals following the grant of summary

judgment in favor of Winking Lizard Tavern ("Winking Lizard") and Cintas

Corporation No. 2 ("Cintas") ("collectively, Appellees").  After a thorough review of the facts and the law, we affirm.

## I.    Procedural History, Facts, and Pertinent Exhibits

### A. Procedural History

{¶ 2}    This case arose from Housel's trip and fall on a floor mat, provided by Cintas, at a Winking Lizard restaurant in Mayfield Heights ("the Restaurant") on September 17, 2024.  The subjects of this appeal are the timing of the parties' exchange of expert reports and the liability of Winking Lizard and Cintas.

{¶ 3}    Housel filed a two-count complaint in the Cuyahoga County Court of Common Pleas, raising against Appellees claims of negligence and negligence per se.[1]  Housel alleged that her fall was caused by a "rumpled floor mat that was wet and not lying flat."  Further, the "hallway and subject mat were poorly illuminated," and both were dark in color, rendering the water and condition of the mat "difficult if not impossible to detect."

{¶ 4}    On December 9, 2024, the court issued a journal entry establishing a case-management schedule.  Pertinent to this appeal, the entry imposed deadlines for the exchange of expert reports, providing, "Plaintiff to complete and exchange expert reports on or before 03/07/2025.  Defendant to complete and exchange

---

[1] Though Housel's complaint named as a defendant "Cintas Corporate Services, Inc.," the parties later stipulated to the substitution of Cintas Corporation No. 2 as the proper party.  Housel's complaint also named several John Doe defendants, which were voluntarily dismissed from this case.

expert reports on or before 04/11/2025." In a journal entry issued April 3, 2025, the court ordered, "Expert discovery is to be completed by 05/09/2025."

**B. Housel's Motion to Exclude Cintas's Expert**

{¶ 5} On April 16, 2025, Housel filed a motion in limine to preclude defense expert Jeffrey Schroeder ("Schroeder") from testifying at trial. Housel argued that Cintas had violated Civ.R. 26(B)(7)(e), which provides that a discovery deposition of an opponent's expert witness is to occur following the mutual exchange of expert reports, by providing an expert report after it had deposed plaintiff's expert Richard Zimmerman ("Zimmerman"), a professional architect. Housel attached to her motion several documents pertinent to this appeal, including a deposition notice indicating that Appellees scheduled Zimmerman's deposition for March 18, 2025. Also attached was a notice filed by Cintas on April 11, 2025, in which Cintas represented that, on that same day, it had provided all parties an expert report that Schroeder prepared. On June 18, 2025, the court issued a journal entry denying Housel's motion in limine.

**C. Winking Lizard's Motion for Summary Judgment**

{¶ 6} Winking Lizard moved for summary judgment on both of Housel's claims, arguing that Housel had not demonstrated a hazardous condition existed or caused her fall. Winking Lizard argued that any water on the mat or floor did not cause Housel's fall because security video showed that Housel did not slip. Rather, Winking Lizard maintained that Housel tripped after catching the toe of her open-toed sandal under the edge of the mat. According to Winking Lizard, undisputed

evidence showed that the mat was lying flat when Housel's sandal contacted it. Any hazard that did exist, argued Winking Lizard, was discoverable and, therefore, open and obvious, meaning that Winking Lizard owed no duty to Housel arising therefrom. Winking Lizard also argued that the record was devoid of evidence that it caused, knew of, or should have known of any hazard that existed.

### D. Cintas's Motion for Summary Judgment

{¶ 7} Cintas moved for summary judgment on both of Housel's claims. Cintas argued that it was entitled to judgment as a matter of law because R.C. 2307.71(B) "abrogates all common law claims against product suppliers and manufacturers," which Cintas interpreted to include the negligence claims that Housel raised against it. Further, according to Cintas, it owed Housel no duty because she was not an intended third-party beneficiary of its contract to provide mats to Winking Lizard. Cintas also argued that the evidence did not demonstrate that Housel's fall and injury resulted from any action that Cintas had undertaken.

### E. Evidence to Support the Motions for Summary Judgment

{¶ 8} Cintas and Winking Lizard proffered the following evidence to support their motions for summary judgment.

### 1. Deposition of William Barbish

{¶ 9} William Barbish ("Barbish") testified that he was a Cintas employee and that he delivered Cintas's products to its customers. He delivered mats to the Restaurant. When doing so, he "look[ed] to make sure that there's no damages on them, that it's the right kind of mat . . . that it's laying as it should when I put it

down."  If a mat would not lay flat, he "wouldn't necessarily" remove it, but would if it had "some canyon peak" or "crinkle" that made him "feel like I couldn't press it down or it wouldn't lay flat after it dried from being damp."  Barbish always unrolled the mats that he delivered but did not know whether Winking Lizard rolled and unrolled the mats after he delivered them.

### 2.  Deposition of Angelique Bull

{¶ 10} Angelique Bull ("Bull") testified that she was a Winking Lizard employee who was working at the Restaurant on September 17, 2024.  That day, before the Restaurant opened, Bull placed six mats on the floor of the Restaurant, including two in the hallway where Housel later fell.  Every night after the Restaurant closed, the mats were rolled up and stored.  Depending "on how the host rolls them," the mats were sometimes stored "standing up straight" and other times stored "laying down."

{¶ 11}  Bull testified that a Cintas employee delivered replacement mats every Friday, which were "new."  Afterwards, if she was present at the Restaurant, Bull made "sure that [the new mats] look[ed] nice," and the Restaurant's Friday morning manager "would make sure that the invoice matched what we were receiving."  Bull did not know what Cintas did with the mats that they took away from the Restaurant.

{¶ 12}  Bull was not aware of anyone else having fallen on the mat that Housel tripped on between when Cintas delivered the mat and when Housel fell.  She acknowledged that she did not "go around checking to see if the floors are wet,"

but denied that anybody had told her there was a wet floor on the day of this incident. She did not see Housel fall but was present in the Restaurant when she did so. After Housel fell, Bull observed that the mat had flipped over partially. Someone other than Bull flipped the edge of the mat back over, after which it laid flat.

### 3. Deposition of Housel

{¶ 13} Housel testified that, on the day of this incident, she was at the Restaurant to meet a friend. She was wearing open-toed sandals. Before she fell, she did not notice the mats because she was looking straight ahead while walking to meet her friend. She was paying attention to where she was going, looking ahead so that she "wouldn't hit into anybody while I was walking to the outside bar." Responding to various questions about whether she had observed details related to the mats, including whether the mats had been "kinked" or "flipped up," Housel maintained that she did not know because she had been looking ahead. Before falling, she was also "putting [her] phone in her purse."

{¶ 14} Housel testified, "I tripped over the mat." She did not know or remember whether her foot slipped or if she caught her foot on the mat. She agreed that "[a]ccording to the video," the mat was flat on the floor before she fell. She agreed that she had observed the edge of the mat to have flipped over only after she fell. While on the ground, she observed liquid on the floor "in front and behind" the mat.

### 4. Deposition of Zimmerman

{¶ 15} Plaintiff's expert Zimmerman testified that Cintas's mats were "relatively thin," made of "PVC," and had "a tufted, carpeted top surface and a relatively smooth bottom surface." The mats "tend to be the cheapest ones on the marketplace." Zimmerman testified that the Cintas mats as used at the Restaurant by the Winking Lizard created an unsafe condition, contributed to "by the nature of the mat, the nature of the way the mat was placed and maintained, cleaned and used." Regarding whether Winking Lizard could have taken precautions to avoid creating this unsafe condition, he testified that Winking Lizard should not have used the mats that it did. According to Zimmerman, Winking Lizard should have decided, "We're going to have to buy mats with suckers on them, or we're going to have to embed mats in the floor, or we're going to have to stop using mats, and we're just going to have to mop our floors more often." He stated that Winking Lizard and Cintas also should have checked to ensure that the mats laid flat after being placed.

{¶ 16} Zimmerman inspected the mat that is the subject of this case on January 3, 2025. He agreed that, on that date, the mat was not in the same condition that it had been in when Housel fell. He agreed that he did not know what condition the mat was in before Housel fell.

### 5. Deposition of Marissa Dickerson

{¶ 17} Marissa Dickerson ("Dickerson") testified that she was a Winking Lizard employee who was working at the Restaurant as a waitress on September 17, 2024. She did not recall anyone else falling on mats at the Restaurant in the days

between that date and Cintas's delivery of the mats. Dickerson did not see Housel fall. She did not remember anything about the floor being wet when Housel fell. After Housel fell, Dickerson saw the edge of the mat flipped over, but denied knowing of any issues with the mats.

### 6. Security Videos

{¶ 18} The affidavit of Geoffrey Rose, Winking Lizard's director of operations, incorporated security videos recorded at the Restaurant on September 17, 2024, that showed Housel's fall.[2] In relevant part, the videos show Housel walking down a hallway, atop black floor mats, under lighting of moderate brightness. Chairs nearby cast shadows, but they do not reach the mats, and individuals in the hallway are clearly visible, as are their actions. The floor is brown; two black mats lay flat on the floor one after the other. No water is visible on the floor or mats.

{¶ 19} Housel walks over the mat furthest from the security camera, moving towards the camera. As she walks from the first mat to the next, she pulls a cellphone from a purse that she is carrying. Housel looks ahead, not down, while doing so. The toe of Housel's shoe — an open-toed sandal — slides underneath the edge of the second mat. It appears that Housel's shoe and foot catch on the mat, causing her to fall forward onto her hands and knees. The edge of the mat flips over so that it is partially folded behind her after the fall. Several individuals, at least

---

[2] During her deposition, Housel agreed that the videos appeared to be a true and accurate representation of what occurred at the Restaurant on September 17, 2024.

some of whom appear to be employees at the Restaurant, speak to Housel, who eventually stands up again and limps down the hallway. One individual flips the mat back over, after which it lays flat.

### 7. Rental Agreement

{¶ 20} Cintas attached to its motion for summary judgment a document entitled "Cintas Corporation National Rental Agreement. [3] The agreement designated Cintas as the exclusive rental-service provider for every Winking Lizard location within Cintas's operating service areas. Cintas agreed to provide "merchandise" to Winking Lizard locations, defined to include black mats. In its motion for summary judgment, Cintas argued that the agreement is devoid of language demonstrating that the contracting parties intended for the contract to benefit a third-party, that is, patrons of the Winking Lizard, such as Housel.

### F. Housel's Opposition Briefs

{¶ 21} Housel filed briefs opposing each of Winking Lizard's and Cintas's motions for summary judgment, arguing against both that the record included triable issues of fact, concerning, among other things, whether the condition of the mat constituted an unreasonably dangerous hazard of which Winking Lizard and Cintas knew or should have known. Housel argued that by failing to remedy the hazard or warn Housel thereof, Winking Lizard and Cintas violated a duty owed to her, as a patron of the Restaurant, to maintain the floor mat and premises in a

---

[3] During his deposition, Barbish agreed that the document appeared to be a rental agreement between Cintas and Winking Lizard concerning the Restaurant.

reasonably safe condition. Housel also argued that there were triable issues of fact as to whether the hazardous condition of the mat was open and obvious, including that the hallway was poorly lit and that the mat and flooring were both dark.

{¶ 22} Regarding Cintas's potential liability in particular, Housel argued that R.C. 2307.71(B) abrogates only product-liability claims, which she had not raised. She also argued that Cintas voluntarily undertook and breached a duty of reasonable care to Winking Lizard's patrons. According to Housel, Cintas did so by contracting with Winking Lizard to provide floor mats that the Restaurant's patrons would walk over and by providing mats that, as used at the Restaurant, constituted a hazardous condition.

## G. Evidence to Oppose the Motions for Summary Judgment

{¶ 23} Housel proffered the following evidence in opposition to the motions for summary judgment.

### 1. Zimmerman's Expert Report

{¶ 24} Housel attached to both of her briefs opposing summary judgment an expert report that Zimmerman prepared related to this incident. Zimmerman opined that the conditions at the Restaurant "violated reasonable standards, which directly and proximately caused the trip, fall and injury of [Housel]." According to Zimmerman, the conditions in question and Housel's subsequent injury resulted from Defendants' "failure to meet the appropriate standard of care."

{¶ 25} In his report, Zimmerman explained that he inspected the mat on which Zimmerman fell. He observed that the mat's "underside is completely smooth

— without any suckers, bumps, dimples, or other 'nubbing' or traction texture." Consequently, the "floor mat will easily and readily slip or slide across the floor surface or lift off the floor surface, resulting in floor mat ripples, furls, and curls." Zimmerman noted that the mat had been rolled for cleaning, transport, and storage, increasing the likelihood that the mat would curl when placed on a floor or contacted by foot. Zimmerman claimed that he was able to recreate the conditions that led to Housel's fall by placing his leading foot on the mat and contacting the mat with his trailing foot. In "nearly every test," this resulted in "flipping, curling, and rolling over the edge of the floor mat."

### 2. Interrogatories

{¶ 26} Housel attached to her brief opposing Winking Lizard's summary-judgment motion Winking Lizard's objections and answers to interrogatories. Concerning these, Housel raised arguments only about Interrogatory No. 21, to which Winking Lizard responded, subject to objections, that "[t]he carpeted mats . . . should not slide forward when walked upon."

### H. Grant of Summary Judgment and Appeal

{¶ 27} On September 6, 2025, the court issued a journal entry granting both Cintas's and Winking Lizard's motions for summary judgment.

{¶ 28} Housel appealed, raising the following assignments of error:

1. The explicit terms of Civ.R. 26(B)(7)(E) were violated, and abuse of discretion was otherwise committed, when the trial court allowed defense counsel to submit an expert report after deposing plaintiff-appellant's liability expert.

2. The common pleas court erred as a matter of law by summarily granting summary judgment upon plaintiff-appellant's ordinary negligence and voluntary undertaking claims against defendant-appellee, Cintas Corporation No. 2.

3. The common pleas court erred as a matter of law by summarily granting summary judgment upon plaintiff-appellant's premises liability claim against defendant-appellee Winking Lizard Tavern.

## II. Law and Analysis

{¶ 29} For ease of analysis, we address these assignments of error together and out of order.

### A. Assignments of Error Nos. 2 and 3 — Grant of the Motions for Summary Judgment

{¶ 30} With her second and third assignments of error, Housel asserts that the court erred in granting Cintas's and Winking Lizard's motions for summary judgment. We disagree.

### 1. Standard of Review, Motion for Summary Judgment

{¶ 31} "Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law." *Madaras v. Applebee's Neighborhood Grill & Bar*, 2025-Ohio-169, ¶ 12, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). A material fact "'might affect the outcome of the suit under the governing law' of the case." *Oko v. Cleveland Div. of Police*, 2021-Ohio-2931, ¶ 23 (8th Dist.), quoting *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993). "A factual dispute is 'genuine' only if 'it

allows reasonable minds to return a verdict for the nonmoving party.'" *Huntington Natl. Bank v. Blount*, 2013-Ohio-3128, ¶ 32 (8th Dist.), quoting *Sysco Food Servs. v. Titan Devs.*, 1995 Ohio App. LEXIS 4762, *7 (9th Dist. Oct. 25, 1995).

{¶ 32} The movant for summary judgment has the "initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment." *Madaras* at ¶ 12, citing *Dresher v. Burt*, 75 Ohio St.2d 280, 292-293 (1996). "[D]etermining whether issues of disputed fact exist is different from making findings of facts"; when a court does the former, "the evidence . . . c[an] not be weighed, only reviewed . . . ." *Smathers v. Glass*, 2022-Ohio-4595, ¶ 32.

{¶ 33} "We review summary judgment rulings de novo, applying the same standard as the trial court." *Madaras* at ¶ 12, citing *Grafton* at 105. "'De novo review encompasses an independent examination of the record and law without deference to the underlying decision.'" *Torres v. Concrete Designs, Inc.*, 2019-Ohio-1342, ¶ 48 (8th Dist.), quoting *Gateway Consultants Group, Inc. v. Premier Physicians Ctrs., Inc.*, 2017-Ohio-1443, ¶ 22 (8th Dist.).

{¶ 34} Video evidence can, in some cases, be considered undisputed evidence in ruling on a motion for summary judgment. "Where . . . the record blatantly contradicts the plaintiff's version of events so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 374 (2007). When "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott* at 380, quoting

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). *Scott* concerned a 42 U.S.C. 1983 claim alleging that a law enforcement official had used excessive force during a car chase. The Court determined the official was entitled to summary judgment under Fed.R.Civ.P. 56(c), analogous to Civ.R. 56 (C), where plaintiff's description of events was contradicted by video evidence to an extent that no reasonable jury could find in his favor. *Scott* at 380. *See Oko*, 2021-Ohio-2831, at ¶ 24, 26 (8th Dist.) (discussing *Scott*, granting summary judgment against plaintiff that sued a municipality, claiming unlawful taking and possession of his vehicles, where video evidence contradicted plaintiff's assertion that his cars were not parked on the street and were therefore not subject to towing).

### 2. Elements of a Negligence Claim Based on Premises Liability

{¶ 35} To establish a negligence claim, a plaintiff must show the existence of a duty, breach thereof, and a resulting proximate injury. *Dicarlo v. Fairview Hosp.*, 2022-Ohio-75, ¶ 24 (8th Dist.), citing *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). It is undisputed that Housel was a business invitee of Winking Lizard. An invitee is a person who enters another's property by express or implied invitation for a purpose beneficial to the property owner. *Id.*, citing *Light v. Ohio Univ.*, 28 Ohio St.3d 66, 68 (1986). "The owner owes a duty to 'exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition.'" *Id.*, quoting *id. See Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 204 (1985) (Business invitees are owed a duty of ordinary care in maintaining premises in a reasonably safe condition so that customers are not unnecessarily and unreasonably exposed to

danger.). To recover for a negligence claim based on premises liability, a business invitee must demonstrate that a defendant was "negligent in creating a hazard, had actual notice of a hazard and failed to remedy it, or had constructive notice by allowing a hazard to exist for an unacceptable amount of time such that the hazard should have been remedied, but was not." *Dicarlo* at ¶ 24, citing *Burke v. Giant Eagle, Inc.*, 2017-Ohio-4305, ¶ 7 (8th Dist.).

### 3. Analysis

{¶ 36} Upon review of the record, we find no genuine dispute of material fact exists and that Appellees are entitled to judgment as a matter of law. The record includes no evidence from which a reasonable jury could find that a hazardous condition existed in the Restaurant, about which Winking Lizard or Cintas knew or should have known, as required to establish a negligence claim based on premises liability.

{¶ 37} As an initial matter, we note that Housel, Dickerson, and Bull were the only witnesses in this case who testified that they were present in the Restaurant when Housel fell. Neither Dickerson nor Bull's testimony indicates that the mat presented an unreasonable danger to patrons of the Restaurant prior to Housel's fall. Both individuals denied seeing Housel fall. Neither had noticed any irregularities in the mat beforehand and denied knowing that anyone else had fallen on the mat before Housel did so.

{¶ 38} Housel's testimony also does not indicate that the mat presented an unreasonable danger before she fell. She testified that, while walking down the

hallway, she did not notice the mats because she was looking ahead, on her way to meet her friend. Responding to various questions about whether she had observed details related to the mats, including whether the mats had been "kinked" or "flipped up," Housel maintained that she did not know because she had been looking ahead before she fell.

{¶ 39} The security video also does not indicate that the mat constituted a hazard at the time Housel fell. The video reveals that the mat lay flat on the floor as Housel approached. The video does not show the mat to be peaked, crinkled, kinked, or otherwise raised above the floor. Though the mat folded over partially when Housel's foot contacted it, the mat laid flat again after an individual in the hallway flipped its edge back onto the floor.

{¶ 40} Despite Housel's contrary arguments, we do not find that a genuine dispute of material fact exists as to whether any hazardous condition was concealed from view because the hallway was dimly lit and the mats blended into the floor. The security video reveals the hallway to be lit moderately. Chairs nearby cast shadows, but they do not reach the mats, and the faces and actions of individuals in the hallway can be seen clearly. The security video also reveals the brown floor in the hallway of the Restaurant and black mat upon which Housel tripped to be distinctly different colors.

{¶ 41} We also are not persuaded by Housel's argument that there is a genuine dispute of material fact regarding whether her fall was caused by water on the floor or water on the mat. Although Housel testified that she saw water on the

floor after she fell, none is visible in the security video. Even if there had been water on the floor, no reasonable factfinder could conclude that it caused Housel's fall. The security video demonstrates that Housel did not slip, as on a wet surface, but rather tripped when the toe of her sandal slid under the edge of the mat, catching beneath it. Housel provided no evidence indicating that water caused this to occur.

{¶ 42} We acknowledge that Barbish and Bull testified that the mats were rolled, including for storage, a practice that Zimmerman opined increased the likelihood that the mats would not remain flat when placed on the floor. However, again, we find no evidence demonstrating that the mat in question was curled before Housel fell, since the video shows that the mat laid flat on the floor before Housel's sandal and foot contacted its edge. Regarding Zimmerman's indication that the method by which the mats were stored and the mat's lack of adhesive or texture made them more likely to flip when contacted, constituting a hazardous condition, we find no evidence that Cintas or Winking Lizard knew or should have known thereof. Bull and Dickerson each testified that, between the time the mats were delivered and Housel's fall, they had not observed any irregularity regarding the mats' condition, nor had they observed any other patron fall on the mats.

{¶ 43} We lastly find no merit in Housel's argument that Winking Lizard admitted the existence of a hazardous condition in response to Interrogatory No. 21, in which Winking Lizard provided, "The carpeted mats . . . should not slide forward when walked upon." The security video demonstrates that the carpeted mat did not slide forward when Housel fell, but rather folded over.

{¶ 44} Having found that the record includes no evidence of a hazardous condition of which Winking Lizard knew or should have known, as required for Housel to prevail on her negligence claims based on premises liability, we decline to address the parties' arguments regarding the other elements of negligence. Further, in light of the finding that no hazard existed, we also decline to address whether Cintas, by contracting with Winking Lizard for the provision of floor mats, voluntarily undertook a duty of reasonable care regarding any hazardous conditions inside the Restaurant. Finally, having found no hazard existed, we decline to address Cintas's assertion that Housel's common-law-negligence claims against it were abrogated by R.C. 2307.71(B).

{¶ 45} Accordingly, assignments of error Nos. 2 and 3 are overruled.

## B. Assignment of Error No. 1 — Denial of Housel's Motion in Limine Regarding Cintas's Expert Jeffrey Schroeder

{¶ 46} With her first assignment of error, Housel asserts that the court erred in denying her motion in limine seeking to preclude defense expert Schroeder's testimony. Housel argues that Cintas violated Civ.R. 26(B)(7)(e) by deposing her expert witness, Zimmerman, before disclosing the report of its own expert, Schroeder. This allowed Schroeder to consider Zimmerman's deposition testimony while creating his report.

{¶ 47} We review a trial court's decisions regarding motions in limine and the admission of expert testimony for abuse of discretion. *180 Degree Solutions L.L.C. v. Metron Nutraceuticals, L.L.C.*, 2021-Ohio-2769, ¶ 57 (8th Dist.); *accord Halenar v. Ameritech-Ohio SBC/Ameritech*, 2011-Ohio-2030, ¶ 28 (8th Dist.). An

abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. An abuse of discretion "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *W.A.F.P., Inc. v. Sky Fuel Inc.*, 2024-Ohio-3297, ¶ 13 (8th Dist.), quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 48} The opinions of expert witnesses must be laid out in a report. The Ohio Rules of Civil Procedure provide that the "reports of expert witnesses expected to be called by each party shall be exchanged with all other parties." Civ.R. 26(B)(7)(b). With exceptions inapplicable here, "[a] party may take a discovery deposition of their opponent's expert witness only after the mutual exchange of reports has occurred." Civ.R. 26(B)(7)(e). We acknowledge that a mutual exchange of reports did not occur before Cintas's deposition of Zimmerman.

{¶ 49} However, to the extent that Cintas's disclosure of Schroeder's expert report contravened the civil rules, we find no prejudice. As Civ.R. 61 states, "[N]o error or defect in any ruling or order . . . is ground . . . for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." The rule further provides, "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." *See* R.C. 2309.59 ("In every stage of an action, the court shall disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of

the adverse party."). "'Under the concept of harmless error, it is neither prudent nor appropriate for this court to order a trial court to remedy an error that does not affect the outcome of the case; i.e., the appellate court may not reverse the trial court unless a substantive right is affected.'" *Luri v. Republic Servs.*, 2014-Ohio-3817, ¶ 9 (8th Dist.), quoting *Children's Hosp. Med. Ctr. v. S. Lorain Merchants' Assn.*, 2006-Ohio-2407, ¶ 7 (9th Dist.).

{¶ 50} Cintas did not use Schroeder's expert report to support its motion for summary judgment, which, as discussed above, the court did not err in granting. Consequently, Housel has not demonstrated that any error the court committed in denying Housel's motion in limine to preclude Schroeder's testimony affected the outcome of this case.

{¶ 51} Accordingly, assignment of error No. 1 is overruled.

{¶ 52} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
TIMOTHY W. CLARY, J., CONCUR